IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIAS INDUSTRIES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| KISSLER & CO. INC., | )<br>)<br>) |
| Defendant. | )<br>) |

2:20-CV-01011-CCW

## **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION**

Before this Court is Defendant Kissler & Co., Inc's Motion for Preliminary Injunction. ECF No. 7. For the reasons stated below, Defendant's Motion is denied.

### **I.  Background**

Plaintiff Elias Industries, Inc. is a wholesale distributor of plumbing parts that primarily sells OEM plumbing parts, which are parts made by an original equipment manufacturer. *Br. in Supp. of Mot. for Prelim. Inj.*, ECF No. 8, at 3. Defendant Kissler is a plumbing repair part manufacturer and distributor that primarily sells non-OEM parts. *Id*. at 2.

On July 6, 2020, Elias initiated this action by filing a four count complaint. *See* Compl., ECF No. 1. As Elias tells it, Elias maintains an online client portal (the "Client Portal") that its customers can apply to Elias to access. *See id.* at ¶ 10. The Client Portal allows customers to place and track orders and provides further information on product pricing, availability, and the customer's order history. *Id.* In September of 2018, Elias used internet technology vendor KickFire to help Elias understand which customers were using its Client Portal, when they were using it, and for what purposes. *Id.* at ¶¶ 13, 14. Elias began monitoring access to the Client Portal,

including by tracking the IP addresses of its Client Portal users. *Id.* at ¶¶ 14, 18. Through the monitoring, Elias learned that one of its Bronx-based customer's Client Portal log-in credentials were being used in Carlstadt, New Jersey—where Kissler's headquarters were located. *Id*. at ¶¶ 19–21. Elias traced that IP address and learned that the computer accessing the Client Portal was located at Kissler's Offices in New Jersey. *Id.* at ¶ 21. Kissler, however, did not have authorization to access Elias's Client Portal. *Id.* Rather, Kissler used Elias's Bronx-based customer's log-in credentials to access Elias' pricing and inventory information as well as Elias's Bronx-based customer's previous inquiries. *Id.* at ¶ 22. Kissler accessed the Client Portal using the Bronx-based customer's credentials numerous times between September 2018 and November 2018. *Id.* at ¶ 23.

When Elias suspended its Bronx-based customer's log-in credentials, a former Elias employee, who then worked for Kissler, used his old credentials to give Kissler access to the Client Portal. *Id.* at ¶¶ 24–28. Upon further inquiry, Elias learned that thirteen (13) of its other customers' credentials were used to access the Client Portal from Kissler's location. *See id.* at ¶ 28.

Elias' Complaint in this case included four counts: (I) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; (II) tortious interference with existing contractual relations; (III) tortious interference with prospective contractual relations; and (IV) procurement of information by improper means. *See* Compl., ECF No. 1, at Counts I–IV.[1]

On July 20, 2020, the *Pennsylvania Record* published an article regarding Elias' lawsuit against Kissler. *See* Br. in Opp. to Mot. for Prelim. Inj., ECF No. 13-1, Ex. A-1. That article did

---

[1] On October 7, 2020, Elias filed an Amended Complaint against Kissler and against Elias' former employee, Kenneth Hans. ECF No. 29. Elias voluntarily dismissed its claims against Defendant Hans on December 21, 2020. ECF No. 57. The Amended Complaint added trade secret-related counts and requests for punitive damages and attorney fees.

not contain any statements from Elias' representatives. *Id.* In late July of 2020, Elias e-mailed copies of the Complaint to twelve (12) of its customers to make them aware of the litigation and to avoid them hearing of the litigation first from the media. Decl. of R. Elias, ECF No. 13-1, at ¶¶ 7–8. These e-mails contained no commentary or characterization regarding the litigation, the parties, or the allegations. *Id.* at ¶ 9; *see e.g.,* E-mail from R. Elias dated July 30, 2020, ECF No. 7-2. Kissler attached the following exemplar email to its Motion for Preliminary Injunction:

```
From: Richard Elias <richarde@eliasindustries.com>
To: ████
Sent: Thu, Jul 30, 2020 12:34 pm
Subject: IMPORTANT NOTE FROM PRESIDENT OF TAPCO-ELIAS INDUSTRIES

Dear ████,

I wanted to let you know we have filed a lawsuit against Kissler & Company.
Please see the attached complaint.

Please call me if you have questions.

Richard Elias


Richard Elias
President
Elias Industries, Inc.
TAPCO Genuine Parts Center
412.963.1306 office
richarde@EliasIndustries.com
Error! Filename not specified.
```

E-mail from R. Elias dated July 30, 2020, ECF No. 7-2 (redactions in original filing). Each of the twelve (12) recipients of Elias' e-mails attaching a copy of the Complaint were customers of Elias whose Client Portal log-in credentials had been used at a Kissler location. Jan. 7, 2021 Oral Arg. Transcript, ECF No. 67, at 25:1–20. Elias was motivated to notify those twelve (12) customers about the Complaint to put them on notice that their log-in credentials were compromised. *Id.*

Kissler filed its Motion for Preliminary Injunction to stop Elias from circulating copies of the original Complaint to members of the plumbing parts industry.[2] *See* Mot. for Prelim. Inj., ECF

---

[2] The Amended Complaint was filed after Defendant's Motion for Preliminary Injunction and Defendant's Motion seeks to enjoin distribution of the original Complaint only. In addition, neither party has represented that Elias disseminated copies of the Amended Complaint to anyone except parties to the litigation Kissler and former-defendant Kenneth Hans, each of whom received the Amended Complaint in accordance with the Federal Rules of Civil Procedure.

No. 7. Kissler's Motion for Preliminary Injunction claims that Elias's e-mails attaching a copy of the Complaint are commercial speech that violated the Lanham Act's prohibition on false advertising and caused Kissler to suffer irreparable harm, including loss of business opportunities and harm to its reputation. *See generally* Br. in Supp. of Mot. for Prelim. Inj., ECF No. 8. Both sides represented to the Court on multiple occasions that an evidentiary hearing was neither requested nor necessary to resolve Kissler's Motion for Preliminary Injunction. *See e.g.,* Minute Entry, ECF No. 58. The parties did, however, request oral argument, which the Court held on January 7, 2021. *See id*; Minute Entry, ECF No. 63; Jan. 7, 2021 Oral Arg. Transcript, ECF No. 67.

## II.   Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited circumstances"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989). Four factors inform a court's decision as to the issuance of a preliminary injunction:

> (1) The likelihood that the plaintiff will prevail on the merits at final hearing;  (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of;  (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued;  and (4) [that] the public interest [weighs in favor of granting the injunction.]
>
> ***
>
> Generally, the moving party must establish the first two factors and only if these 'gateway factors' are established does the district court consider the remaining two factors. The court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (citations omitted)); *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (citing *Del. River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 Fed.Appx. 727, 732 (3d Cir. 2009); 13 Moore's Federal Practice – Civil § 65.22 (2020).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179; *see also*, 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits.). Even where a movant succeeds in showing a likelihood of success on the merits, if the other three factors are not satisfied, the court should exercise its discretion to deny the preliminary injunction. *See Winter*, 555 U.S. at 32 ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.").

"A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Ace Am. Ins. Co.*, 306 Fed.Appx. at 732 (citations omitted). To establish irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. To do so, the movant "must demonstrate a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air*, 882 F.2d at 801. The risk of irreparable harm cannot be speculative; "mere risk" of irreparable harm is insufficient—the movant must make a "clear showing of immediate irreparable injury, or a presently existing actual threat; [an injunction] may not be used simply to eliminate the possibility of a remote future injury, or a future invasion of rights[.]"

*Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, Case No. 3:15-cv-22, 2016 U.S. Dist. LEXIS 169709 at *8 (W.D. Pa. Dec. 8, 2016).

"In the absence of exceptional circumstances, economic loss does not qualify as irreparable harm [and] '[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable.'" *Hadeed*, 2016 U.S. Dist. LEXIS 169709 at *7–8 (quoting *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994)); *see also*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

### III. Discussion

#### A. Kissler Cannot Demonstrate Likelihood of Success on the Merits

Kissler bases its request for preliminary injunction on its claim that Elias committed false advertising under the Lanham Act when it sent copies of the Complaint to industry participants. To obtain a preliminary injunction, Kissler must prove that it is likely to succeed on the merits of its Lanham Act allegations. *See Greater Phila. Chamber of Commerce*, 949 F.3d at 133.

Generally speaking, the Lanham Act prohibits false advertising. *See* 15 U.S.C. § 1125. Technically speaking, it provides:

> Any person who, on or in connection with any goods of services, or any container of goods, uses in commerce any word, team, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which . . .

6

> (B) in commercial advertising or promotion misrepresents the nature, characteristics, qualifies or geographic origin of his or her or another person's good, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). By its own terms, § 1125 only applies to representations "in commercial advertising or promotion." *Id.* "Commercial advertising or promotion" is limited to:

> (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" with the industry.

*See e.g., Peek v. Whittaker*, 2:13-cv-1188, 2016 WL 6806265, at *7 (W.D. Pa. Nov. 17, 2016) (Hornak, C.J., then-J.); *Caldon Inc. v. Adv. Measurement & Analysis Grp., Inc.*, 515 F.Supp.2d 565, 578 (W.D. Pa. 2007) (*citing Seven Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 2007)).

For speech to be commercial, the court considers: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990). "Stated succinctly, the 'commercial speech doctrine rests heavily on the common sense distinction between speech proposing a commercial transaction . . . and other varieties of speech.'" *Id.* (quoting *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637 (1985) (internal quotations omitted)). Black's Law Dictionary defines "advertisement" as "[a] commercial solicitation; an item of published or transmitted matter made with the intention of attracting clients or customers." *Advertisement*, Black's Law Dictionary (11th ed. 2019).

Elias' e-mails transmitting a copy of the Complaint to approximately twelve customers do not contain a commercial solicitation, and the Complaint was not created with the intent of

7

attracting clients or customers, but rather to right the perceived wrongs alleged therein. Furthermore, the e-mails at issue were not created with the intention of attracting clients or customers. They were sent to a particular set of twelve of Elias' *existing* customers who had their log-in credentials used at Kissler's headquarters, to inform them of that use. Jan. 7, 2021 Oral Arg. Transcript, ECF No. 67, at 25:1–20. The e-mails also did not refer to a particular product. Though Elias may have been motivated economically to stop unauthorized access to its Client Portal, that economic benefit does not stem from a proposed transaction. In sum, the e-mails fall outside the common sense understanding of speech that proposes a commercial transaction. Therefore, they are not commercial speech, commercial advertising, or promotion within the purview of the Lanham Act. In addition to the fact that the e-mails transmitting the Complaint are not commercial speech, they also were not sent for the purpose of influencing customers to buy Elias's goods or services. Rather, Elias disseminated them to inform its existing clients that their log-in credentials might be compromised. Id,. Accordingly, Kissler is unlikely to succeed on a Lanham Act claim.

In addition to establishing that Elias' e-mails were considered "commercial advertising or promotion," Kissler would also need to demonstrate the following five elements to succeed under the Lanham Act:

> (1) [Elias] has made false or misleading statements as to [its] own product or another's;  (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;  (3) the deception is material in that it is likely to influence purchasing decision;  (4) the advertised goods traveled in interstate commerce;  and (5) there is a likelihood of injury to [Kissler] in terms of declining sales, loss of good will, etc.

*See Penrod Ricard USA, LLC v. Bicardi USA, Inc.*, 653 F.3d 241, 248 (3d Cir. 2011);  *Peek*, 2016 WL 6806265 at *7.  Kissler cannot carry this burden with respect to the second prong. Elias

circulated the Complaint and informed twelve of its clients that Elias had filed the Complaint. *See e.g.,* E-mail from R. Elias dated July 30, 2020, ECF No. 7-2 (redactions in original filing). The fact that Elias filed the Complaint is literally true. *See* Am. Compl., ECF No. 1; *see Peek*, 2016 WL 6806265, at *8 (finding that there is no deception or tendency to deceive in circulating a copy of a preliminary injunction order when the fact the preliminary injunction order existed is literally true). The e-mails at issue do not characterize the contents of the Complaint. At most, the Complaint can be seen as an account of the events as Elias believes them to be. Certainly, Kissler may dispute Elias' account as part of its defense in this lawsuit and Elias will need to prove its allegations in order to ultimately succeed in this lawsuit. However, Kissler has not demonstrated that Elias does not believe the allegations in the Complaint to be true. Therefore, there was no actual deception or tendency to deceive and Kissler is not likely to succeed in a Lanham Act claim.

Given that Kissler is unlikely to succeed on the merits of a Lanham Act claim, it cannot meet the standard for a preliminary injunction. *Greater Phila. Chamber of Commerce*, 949 F.3d at 133.

## IV. Conclusion

For these reasons, Kissler's Motion for Preliminary Injunction, ECF No. 7, is hereby DENIED.

DATED this 5th day of February, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record