**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELIAS INDUSTRIES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KISSLER & CO. INC., )<br>)<br>Defendant. )<br>) | 2:20-CV-01011-CCW |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendant Kissler & Co, Inc.  ECF No. 36.  For the reasons that follow, Defendant's Motion will be GRANTED in part and DENIED in part.

## I.    Background

The factual background as alleged by Plaintiff, Elias Industries, Inc., in the Amended Complaint is as follows.  Plaintiff is a distributor of Original Equipment Manufacturer ("OEM") plumbing parts, ECF No. 29 at ¶¶ 10–11, and Defendant, Kissler & Co., Inc., is a plumbing parts manufacturer.  *Id.* at ¶ 22.  Plaintiff alleges that Defendant secretly accessed Plaintiff's internet-based customer portal without authorization to obtain information about Plaintiff's product availability, customer-specific product pricing, purchase history, and anticipated future purchases.  *Id.* at ¶ 8.

1

Plaintiff developed an online portal (the "Client Portal") that allows its customers to place and track orders, see customer-specific pricing and product availability, review past order and shipping history, and place items in a virtual "shopping cart" to save for future purchases. *Id.* at ¶ 24. The Client Portal contains discount offers that are "specifically tailored" to the individual customer, based on the customer's unique purchase history. *Id.* at ¶ 16. Plaintiff makes the Client Portal available only to approved customers, who are plumbing parts distributors with an established history of purchases and reliable payments, by assigning approved customers unique login credentials. *Id.* at ¶ 26. Plaintiff never authorized Defendant to use the Client Portal. *Id.* at ¶ 28.

In September 2018, Plaintiff began to use IP tracking software on the Client Portal to learn more about how customers were using the system. *Id.* at ¶ 31. The software identified that the Client Portal account belonging to one of Plaintiff's customers, L.A.S., had been accessed from an internet protocol address in Carlstadt, New Jersey, the location of Defendant's offices ("Kissler IP"). *Id.* at ¶¶ 38–40. Plaintiff suspended access to the L.A.S. account in November 2018, but continued to see unsuccessful access attempts from the Kissler IP for several days thereafter. *Id.* at ¶ 45. Near the end of November 2018, Plaintiff began to observe repeated access attempts from the Kissler IP, using the credentials of several different customers of Elias. *Id.* at ¶ 58. On one occasion, a user at the Kissler IP successfully accessed the Client Portal using the credentials of a former Elias and then-current Kissler employee, Peter Hans. *Id.* at ¶¶ 49, 53–54. Hans had signed a separation agreement with Plaintiff that included provisions prohibiting him from disclosing confidential or proprietary business information. *Id.* at ¶¶ 50–51. Defendant knew, when it hired Hans in October 2018, that Hans could provide Client Portal credentials. *Id.* at ¶ 52. Plaintiff documented over 100 Client Portal access attempts from the Kissler IP, using at least ten Client

Portal customer accounts, between November 2018 and July 2019. *Id.* Plaintiff routinely suspended customer accounts upon finding an access attempt from the Kissler IP. *Id.*

Plaintiff incurred significant costs to investigate, assess, and remediate damage caused by the Defendant's conduct, including the cost of purchasing IP tracking software and retaining consultants to review security. *Id.* at. ¶ 72. Plaintiff has suffered at least "hundreds of thousands" of dollars in lost revenue to customers like L.A.S., and attributes this loss to Defendant's conduct. *Id.* at ¶ 73.

## II.    Procedural History

Plaintiff filed the Complaint on July 6, 2020. ECF No. 1. Defendant moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) on September 16, 2020. ECF No. 15. Plaintiff timely filed its Amended Complaint on October 7, 2020. ECF No. 29. Plaintiff's Amended Complaint added claims against Kenneth Hans, Plaintiff's former employee and a current employee of Defendant. *See generally* ECF No. 29. On December 21, 2020, Plaintiff dismissed its claims against Mr. Hans voluntarily. ECF No. 57. The remainder of the Amended Complaint asserts nine claims under federal and state law against Defendant: (1) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 (Count I); (2) violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq.* (Count II); (3) violation of the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa. Cons. Stat. § 5302 (Count III); (4) tortious interference with existing contractual relations under Pennsylvania law (Count IV); (5) tortious interference with prospective contractual relations under Pennsylvania law (Count V); (6) procurement of information by improper means under Pennsylvania law (Count VI); (7) punitive and exemplary damages under DTSA, PUTSA, and Pennsylvania common law (Count VIII); (8) attorneys' fees

under DTSA and PUTSA (Count IX);  and (9) a request for injunctive relief under DTSA and PUTSA (Count X).

Defendant moved to dismiss Plaintiff's Amended Complaint on October 21, 2020, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The parties have had a full opportunity to brief the issues presented in Defendant's Motion, ECF Nos. 37, 49, and 52, and the Motion is now ripe for disposition.

### III.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to

the assumption of truth."   Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

### IV. Discussion

**A.    The Amended Complaint States a Claim Under the Computer Fraud and Abuse Act**

Defendant asserts that Plaintiff's claim under the CFAA in Count I fails to:  (1) allege any cognizable losses or damages;  (2) allege a protected computer;  and (3) allege an intent to defraud. Because the Court finds that the allegations in the Amended Complaint are sufficient to state a claim under the CFAA, Defendant's Motion with respect to Count I will be denied.

### 1.   Legal Framework

The CFAA, 18 U.S.C. § 1030, prohibits fraudulent and unauthorized access of computer systems and creates a private right of action for those who suffer damages resulting from prohibited conduct.  18 U.S.C. § 1030(g).  The Amended Complaint alleges that Defendant violated two substantive provisions of the CFAA:  § 1030(a)(2)(C) and § 1030(a)(4).  A person violates § 1030(a)(2)(C) if they (1) access a computer;  (2) intentionally;  (3) without authorization or exceeding authorized access;  and (4) obtain information from any protected computer.  A person is in violation of §1030(a)(4) if they (1) access a protected computer;  (2) without authorization or exceeding authorized access;  (3) knowingly and with intent to defraud;  and (4) further the intended fraud and obtain anything of value. *See, e.g., P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Beyond the substantive elements of a CFAA violation, the statute's private right of action is further limited to situations where the defendant's conduct satisfies one of the factors set forth in § 1030(c)(4)(A)(i)(I)-(V), of which only subclause (I)—"loss to [one] or more persons during any [one]-year period…aggregating at least $5,000 in value"—is relevant here. 18 U.S.C. § 1030(c)(4)(A)(i)(I).  *See* ECF No. 29 at ¶¶ 80–83.

"Loss" in this context means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]"   18 U.S.C. §1030(e)(11).  Courts in the Third Circuit read the term "loss" narrowly, requiring it to be related to impairment of or damage to a computer.  *See, e.g., Advanced Fluid Sys. v. Huber*, 28 F.Supp.3d 306, 330 (M.D. Pa. 2014);  *Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 U.S. Dist. LEXIS 29878, at *17 (E.D. Pa. Mar. 6, 2012) ("the investigating or remedying damage must be related to the damage to the computer").  Losses include the "cost of remedial measures taken to investigate or repair the damage to the computer[.]"  *Advanced Fluid Sys.*, 28 F.Supp.3d at 338;  *see e.g., Integrated Waste Sols., Inc. v. Goverdhanam*, No. 10-2155, 2010 U.S. Dist. LEXIS 127192, *27 (E.D. Pa. Nov. 30, 2010) (denying motion to dismiss CFAA claim where plaintiff alleged costs for retaining security services to investigate sources of cyberattacks).  By contrast, "damage" means "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8);  *see also*, *In re Maxim Integrated Prods.*, 2013 U.S. Dist. LEXIS 196320, at *81.

Here, Defendant contends that Plaintiff's CFAA claim is insufficient for three reasons: (1) Plaintiff did not sufficiently plead a loss; (2) the Client Portal is not a "protected computer" under the CFAA; and (3) Defendant did not access the Client Portal with the intent to defraud Plaintiff.

### 2.   Elias has Sufficiently Pled Loss in Excess of $5,000 in a One-Year Period

The Amended Complaint claims that Plaintiff incurred costs to "investigate, assess, and remediate" the unauthorized access to the Client Portal, including purchase of website traffic tracking software and retention of consultants to review security. ECF No. 29 at ¶ 72. Plaintiff asserts that it began using free software to gather data about Client Portal use, ECF No. 29 at ¶ 31, but decided to purchase software to combat unauthorized access when it discovered an apparent unauthorized access from the Kissler IP. *Id.* at ¶ 43. Plaintiff contends that it worked over the next year to identify further access attempts from the Kissler IP, and to suspend the customer account credentials used in these attempts. *Id.* at ¶ 58. And Plaintiff alleges that it hired consultants to conduct reviews of unauthorized Client Portal access attempts. *Id.* at ¶ 72. Specifically, Plaintiff alleges that "[a]s a result of Defendant's conduct, Plaintiff suffered losses including, but not limited to, costs incurred in responding to the Fraudulent Access, conducting an assessment of the damage to the Client Portal and Client Portal Information, monitoring Client Portal access, and restoring the Client Portal to its condition prior to the Fraudulent Access. Plaintiff's losses aggregate to at least $5,000 during the preceding one-year period." ECF No. 29 at ¶¶ 82–83. Together, Plaintiff's allegations meet the § 1030(g) threshold for loss necessary to maintain a civil claim for a CFAA violation. *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(I) and (g).

### 3.  Protected Computer

Next, Defendant argues that Plaintiff's Amended Complaint fails to allege a "protected computer" for CFAA purposes.  ECF No. 37 at 9–10.  The Court disagrees.  As relevant here, the CFAA defines "protected computer" as a computer "which is used in or affecting interstate or foreign commerce."  18 U.S.C. §1030(e)(2)(B).  "Such devices include 'any data storage facility or communications facility directly related to or operating in conjunction with' a computing system."  *Integrated Waste Sols*., 2010 U.S. Dist. LEXIS 127192 at *22 (quoting 18 U.S.C. § 1030(e)(1)).  The CFAA does not define a "data storage facility" or "communications facility," but, relying on expert testimony, a District Court in this Circuit , determined that a "data storage facility" is an active system with the ability to interact, as opposed to a data storage device, which is anything that can record data.  *GWR Med., Inc. v. Baez*, Civil No. 07-1103, 2008 U.S. Dist. LEXIS 19629, at *11 (E.D. Pa. Mar. 13, 2008).  Thus, accepting Plaintiff's factual allegations as true, the Court concludes that, for the purposes of Defendant's Motion, the Client Portal is a data storage system because users can interact with the data it contains.

Furthermore, the interstate commerce requirement for a protected computer is also satisfied here.  Plaintiff alleges that its primary place of business is Pennsylvania, ECF No. 29 at ¶ 10, and alleges a nationwide base of customers who use the Client Portal.  *Id.* at ¶¶ 30, 38, 58.  These facts, accepted as true here, are sufficient to establish that the Client Portal is used in interstate commerce and meets the CFAA's definition of "protected computer."

### 4.  Intent to Defraud

Finally, Defendant contends that Plaintiff's CFAA claim fails to sufficiently allege intent to defraud.  To support a CFAA claim under 18 U.S.C. § 1030(a)(4), Plaintiff must allege that

Defendant accessed the Client Portal "knowingly with intent to defraud."  Knowledge, as a state of mind, may be alleged generally in a pleading.  Fed. R. Civ. P. 9(b).  District Courts within the Third Circuit hold § 1030(a)(4) claims to the general pleading standards of Rule 8, not Rule 9's heightened pleading standard that normally applies to allegations of fraud.  *See e.g., In re Maxim Integrated Prods.*, 2013 U.S. Dist. LEXIS 196320 at *80–81;  *PNY Techs., Inc. v. Salhi*, Civil Action No. 2:12-cv-04916(DMC)(JAD), 2013 U.S. Dist. LEXIS 110877, at *16 (D.N.J. Aug. 5, 2013);  *Sealord Holdings, Inc. v. Radler*, Civil Action No. 11-6125, 2012 U.S. Dist. LEXIS 29878, at *20–21 (E.D. Pa. Mar. 6, 2012).

Plaintiff sufficiently alleges "intent to defraud" to support a claim under § 1030(a)(4). Plaintiff asserts that Defendant accessed the Client Portal "knowingly, intentionally, and repeatedly" "without authorization" and "intended to defraud Elias through the Fraudulent Access by obtaining and using the Client Portal Information in economic competition with Elias."  ECF No. 29 at ¶¶ 78–79.  These allegations are sufficiently particular to support a claim for fraudulent access at the pleading stage pursuant to the applicable pleading standard from Rule 8.  *See In re Maxim Integrated Prods.*, 2013 U.S. Dist. LEXIS 196320 at *80;  *Sealord Holdings,* 2012 U.S. Dist. LEXIS 29878, at *20–23.  Therefore, Defendant's Motion to Dismiss Plaintiff's CFAA claim will be denied.

**B.**     **The Amended Complaint Fails to State a Claim for Trade Secret Misappropriation Under Federal or State Law**

Defendant argues that Plaintiff's misappropriation of trade secrets claims in Count II (under the Federal Defend Trade Secrets Act ("DTSA")), 18 U.S.C. § 1836 *et seq.*) and Count III (the Pennsylvania Uniform Trade Secrets Act ("PUTSA")), 12 Pa. C.S. § 5301 *et seq.*) must be

dismissed because Plaintiff failed to plead either the existence of any trade secret or that Defendant misappropriated any existing trade secret.  ECF No. 37 at 16.  The Court agrees.

### 1.   Legal Standard for Misappropriation of Trade Secrets

Although the DTSA and PUTSA have different wording, federal courts presented with trade secret claims under both statutes have distilled the definitions into a common operative definition of a trade secret:  Information that "(1) the owner has taken reasonable means to keep secret;  (2) derives independent economic value, actual or potential, from being kept secret;  (3) is not readily ascertainable by proper means ; and (4) others who cannot readily access it would obtain economic value from its disclosure or use."  *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F.Supp.3d 434, 445 (E.D. Pa. Dec. 3, 2018).  Defendant argues that Plaintiff fails the first, third, and fourth prongs.

Plaintiff's trade secret claims fail the first prong because the Amended Complaint does not include facts sufficient to establish that Plaintiff took reasonable measures to protect the information on the Client Portal.  Plaintiff argues that it restricted the type of information displayed to customers in the Portal, and monitored access to the Portal.  ECF No. 49 at 17.  However, Plaintiff does not allege it took any measures, such as conditioning access to Portal Information on non-disclosure, to ensure that Plaintiff's customers would keep Portal Information secret rather than sharing it with other interested parties in the industry.

By a similar analysis as to the third prong, the Portal Information is not entitled to trade secret protection because it was readily ascertainable by proper means.  In arguing for trade secret protection for customer-specific pricing, Plaintiff draws the analogy between the plumbing parts business and the car-buying business.  ECF No. 29 at ¶ 67–68.  Plaintiff alleges that while the

"MSRP" or "list" price of the merchandise is public knowledge, a discounted price offer "is closely guarded because it is an unvarnished indication of just how far Plaintiff is willing to go to make a sale to a particular customer."   ECF No. 29 at ¶ 68.   This analogy, however, offers a useful illustration of why Portal Information is not protectible under trade secret laws.   A prospective car-buyer is free to take a dealer's discounted price offer to a competitor in an attempt to obtain a more favorable deal.   Likewise, Plaintiff's customer's ability to disclose Plaintiff's pricing offer is essential to ensuring that the customer may negotiate freely and effectively in the market.   This conclusion accords with Third Circuit precedent holding that when pricing information is already known to third parties, who have the incentive and right to disclose it, the information does not constitute a trade secret. *SI Handling*, 753 F.2d at 1257;  *see also*, *Van Prods. Co. v. Gen. Welding & Fabricating Co*., 213 A.2d 769, 261 (Pa. 1965) ("material sources and costs" are not protectable trade secrets because they are "something that would be learned in any productive industry[.]"). To prevent competitors from using pricing information in these circumstances "would put an undue burden on the innocent [third-party customers], as well as place an artificial constraint on the free market." *Id.*   Pennsylvania courts have made similar holdings.   *See, e.g., Tyson Metal Prods., Inc. v. McCann*, 546 A.2d 119, 122 (Pa. Super. Ct. 1988) (denying trade secret protection to information that "could be discovered through legitimate channels (contacting the suppliers personally) by energetic, conscientious and eager members of the competition").   Plaintiff has not pleaded that its customers are not at liberty to disclose customer-specific Portal Information that Plaintiff seeks to protect.   Because a customer furthering its own interest in the market has the incentive and right to disclose Portal Information voluntarily, the Portal Information is readily ascertainable by proper means and does not qualify for trade secret protection under either DTSA or PUTSA.  *See SI Handling*, 753 F.2d at 1257;  *Van Prods. Co*., 213 A.2d at 261.

11

As to prong four, the Portal Information Defendant allegedly sought was not a data compilation or proprietary pricing formula that merited greater protection.  Unlike in *Freedom Med. Inc. v. Whitman*, 343 F.Supp.3d 509, 520 (E.D. Pa. 2018) which protected certain data compilations, the Portal Information here is not protectable because Plaintiff does not allege here that Tapco prices were "the product of a comprehensive budgeting process";  that Defendant acquired a "full compilation of pricing information";  or that the pricing information that Defendant acquired was withheld from customers except during a formal bidding process.  *Id.*  Rather, Plaintiff alleges that Defendant made piecemeal efforts over several months to gather pricing data relevant to a subset of Tapco customers, at times when it acquired a customer's Client Portal credentials.  ECF No. 29 at ¶ 58.

In sum, despite Plaintiff's claim that Defendant gained a "comprehensive blueprint to undercut Elias at every turn," *id.* at ¶ 71, the facts alleged cannot support a claim that the Portal Information that Defendant obtained was a data compilation or pricing formula entitled to protection as a trade secret.  For these reasons, Counts II and III of the Complaint will be dismissed.  However, "the court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Accordingly, this Court will grant leave to amend Counts II and III of the Complaint, because Plaintiff could conceivably adduce additional facts necessary to establish that Portal Information qualifies for trade secret protection under the statutes.

## C.   The Amended Complaint States a Claim for Tortious Interference with Existing and Prospective Contractual Relations

Defendant argues that Plaintiff's claims that Defendant tortiously interfered with its existing contractual relations (Count IV) and its prospective contractual relations (Count V) must fail because (1)  Plaintiff did not allege an existing or prospective contract, ECF No. 37 at 21;  (2)

that even if Plaintiff had, Plaintiff did not allege any "interference" with those contracts or "purpose to harm,"  ECF No. 37 at 23;  and (3) that even if Defendant interfered with Plaintiff's contracts, Plaintiff did not allege that Defendant did so wrongfully or without privilege, ECF No. 37 at 24.

### 1.  Legal Standard: Tortious Interference with Existing Contractual Relations

The Pennsylvania Supreme Court has adopted Restatement Second of Torts § 766, recognizing tortious interference with contractual relations.  *Walnut Street Assocs. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 474 (Pa. 2011) ("this Court acknowledged a well-established cause of action for intentional, improper interference with existing contractual relations").  A plaintiff must prove (1) an existing contractual or economic relationship between the plaintiff and a third party;  (2) purposeful action by the defendant, specifically intended to harm an existing relationship;  (3) the absence of privilege or justification on the part of the defendant;  and (4) actual damage resulting from the defendant's conduct.  *See, e.g., Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009).[1]  Defendant argues that Counts IV and V must be dismissed because Plaintiff cannot establish any of the first three elements.

---

[1] Tortious interference with prospective contractual relations is also cognizable under Pennsylvania law. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979) (applying Restatement Second of Torts § 766B to claim for interference with prospective contractual relations).  To allege tortious interference with a prospective contractual relation, rather than an existing one, a plaintiff must show an "objectively reasonable likelihood or probability that the contemplated contract would have materialized absent the defendant's interference." *Acumed LLC v. Advanced Surg. Servs.*, 561 F.3d 199, 213 (3d Cir. 2009) (citations omitted).  An objectively reasonable likelihood of a contract is "something less than a contractual right but more than a mere hope" of a future contract. *Id.*

## 2. Plaintiff Sufficiently Pleaded Existing and Prospective Contractual Relationships

Plaintiff has sufficiently pled existing and prospective contractual relations with its customers who use the Client Portal. The Client Portal is available only to customers who have a unique login name and password. ECF No. 29 at ¶ 26. Plaintiff assigns these credentials only to customers who qualify as plumbing parts distributors and who have a history of purchases and timely payments to Elias. *Id.* Moreover, a primary purpose of the Client Portal is to allow customers to place orders with Plaintiff. *Id.* at ¶ 24. These facts are sufficient to support the assertion that Plaintiff's customers are current and prospective buyers of Plaintiff's products. Contrary to Defendant's argument that Plaintiff failed to identify specific customers with whom it had existing or prospective contracts, ECF No. 37 at 21, the Complaint identifies several specific customers with open and past invoices, and with historical purchasing information. ECF No. 29 at ¶ 58. At the initial pleading stage, this depth of engagement between Plaintiff's customers and Plaintiff suffices to demonstrate ongoing contractual relationships as well as a reasonable likelihood of future orders.

## 3. Plaintiff Sufficiently Pleaded that Defendant Accessed the Portal Information Purposefully with Intent to Harm Plaintiff

Plaintiff has also sufficiently pled that the Defendant took purposeful action intended to harm an existing relationship or prevent a prospective relationship, without privilege or justification. The Pennsylvania Supreme Court has emphasized that tortious interference is intentional: "the actor is acting as he does *for the purpose of causing harm* to the plaintiff." *Glenn v. Point Park Coll.*, 272 A.2d 895, 899 (Pa. 1971). However, in cases of a zero-sum competition, a defendant may have legitimate interests that directly conflict with a plaintiff's legitimate

interests.  Thus, in these cases, "a line must be drawn" between proper and improper conduct.  *Id.* at 899.  "What is or is not privileged conduct in a given situation is not susceptible of precise definition," but certain interferences "are sanctioned by the 'rules of the game' which society has adopted" and thus constitute "socially acceptable conduct which the law regards as privileged." *Id.*  Plaintiff's Complaint outlines a theory in which Defendant sought to enhance its market position by obtaining and using Portal Information obtained without Plaintiff's authorization.  As discussed above, Plaintiff has sufficiently alleged that Defendant's conduct violated the CFAA, a statute that protects computers used in interstate commerce.  18 U.S.C. § 1030(e)(2).  Further, Plaintiff has also alleged that on one occasion, Defendant induced a former employee of Plaintiff's to breach a contractual duty of confidentiality.  ECF No. 29 at ¶¶ 49–54.  Therefore, the Complaint has sufficiently pled that Defendant took specific actions intended to harm Plaintiff.

### 4. Plaintiff Sufficiently Pleaded that Defendant Wrongfully Accessed the Portal Information without Privilege

Where, as here, the plaintiff alleges that the defendant was a direct business competitor, the Pennsylvania Supreme Court has used Restatement Second of Torts § 768 as a guide to determine whether conduct was culpable and not justified.  *See e.g., Walnut Street Assocs.*, 20 A.3d at n.9, n.11.  A competitor's conduct is not actionable as improper interference and may be justified where:

> (a) the relation concerns a matter involved in the competition between the actor and the other;  and (b) the actor does not employ wrongful means;  and (c) the action does not create or continue an unlawful restraint of trade;  and (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768 (Am. Law Inst. 1979).

In determining whether the defendant's conduct was improper, Pennsylvania law also looks to § 767 of the Restatement (Second) of Torts which sets out factors for the court to consider including the plaintiff's conduct, motive, and interests as well as the social interest in protecting the actor's freedom of action. *See Walnut Street Assocs.*, 20 A.3d at 476 (citing *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175 (Pa. 1978));  Restatement (Second) of Torts § 767 (Am. Law Inst. 1979).  "In applying § 767, the Third Circuit has observed that 'the factors [outlined in § 767] ... are laden with subjective value judgments that will rarely be answerable as a matter of law.'"  *Sandoz Inc. v. Lannett Co., Inc.,* No. 20-3538, 2020 U.S. Dist. LEXIS 242558, at *5 (E.D. Pa. Dec. 28, 2020) (quoting *Avaya, Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 384 (3d Cir. 2016)).

For these reasons, the Court concludes that Plaintiff has stated a claim for tortious interference in Counts IV and V, and Defendant's Motion will be denied as to those counts.

**D.     The Amended Complaint States a Claim for Procurement of Information by Improper Means**

In Count VI of the Amended Complaint, Plaintiff alleges that Defendant procured confidential Portal Information by improper means.  ECF No. 29 at Count VI.  Defendant argues that Count VI must be dismissed because Defendant never actually "procured" information from Plaintiff and because the Portal Information is not confidential.  ECF No. 37 at 22.

Pennsylvania, which has adopted Restatement (Second) of Torts, § 759, allows plaintiffs to recover for tortious procurement of information by improper means, the elements of which are as follows:  (1) procurement;  (2) by improper means;  (3) for the purpose of advancing a rival business interest;  (4) of information about another's business. *Arconic Inc. v. Novelis, Inc.*, Civil Action No. 17-1434, 2020 U.S. Dist. LEXIS 231531, *62 (W.D. Pa. Dec. 9, 2020) (quoting *Revzip,*

16

*LLC v. McDonnell*, No. 3:19-cv-191, at *11 (W.D. Pa. Apr. 21, 2020)); *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 708–09 (Pa. Super. Ct. 2005).

Defendant argues that since it never retained or removed any information from the Client Portal, Plaintiff fails the "procurement" prong. ECF No. 37 at 22. But Defendant offers no support for its claim that "procure" requires retaining or removing information, as opposed to accessing otherwise confidential information. *See* ECF No. 37 at 22. Black's Law Dictionary defines "procurement" as "[t]he act of getting or obtaining something or of bringing something about." *Procurement*, <u>Black's Law Dictionary</u> (11th ed. 2019). Plaintiff alleges that Defendant obtained confidential Portal Information. *E.g.,* ECF No. 29 at ¶¶ 62–65. That allegations satisfies the "procurement" prong of the analysis.

Defendant also argues that the tort of wrongful procurement applies only to confidential information, and that the Portal Information is not confidential or secret because Plaintiff gave numerous customers access to that information. ECF No. 37 at 22–23. Courts in the Third Circuit have observed that the information improperly procured need not rise to the level of a trade secret to support a claim under Pennsylvania law, but it must be confidential. *See, e.g., Revzip,* U.S. Dist. LEXIS 70140 at *35. The confidentiality requirement is consistent with commentary to the Restatement. "[I]f one freely gives full information about the state of his accounts to trade associations, credit agencies or others who request it, the possession, disclosure or use of the same information by one who procured it through improper means can hardly cause him harm." Restatement (Second) of Torts § 759 cmt. b. (Am. Law. Inst. 1975); *see also Sims v. Mack Truck Corp.*, 488 F. Supp. 592, 598 n.4 (E.D. Pa. 1980).

Where improper procurement claims have survived dismissal in Third Circuit courts, plaintiffs have alleged that defendants obtained confidential information by breaching or inducing

a breach of a duty of confidentiality.  In some cases, this duty has arisen from an employer-employee relationship, as in *Mifflinburg Tel., Inc. v. Criswell*, 277 F.Supp.3d 750 (M.D. Pa. 2017); *Ctr. Pointe Sleep Assocs., LLC v. Panian*, No. 08-1168, 2009 U.S. Dist. LEXIS 21808 (W.D. Pa. Mar. 18, 2009).  In other cases, information was procured in violation of a contractual provision, as in *Sandoz Inc. v. Lannett Co., Inc.*, No. 20-35382020, U.S. Dist. LEXIS 242558 (E.D. Pa. Dec. 28, 2020);  *Symphony Health Sols. Corp. v. IMS Health, Inc.*, No. 13-4290, 2014 U.S. Dist. LEXIS 114211 at *4 (E.D. Pa. Aug. 15, 2014).

In this case, Plaintiff alleges that Defendant gained access to Portal Information by inducing Mr. Hans to breach his Separation Agreement by allowing Defendant to access Plaintiff's Client Portal using his credentials.  ECF No. 29 at ¶¶ 49–54.  Although Plaintiff does not allege that Plaintiff's customers expressly assumed a duty of confidentiality as a condition for accessing the Client Portal, Mr. Hans did sign a Separation Agreement which forbid him from using, publishing, disclosing or authorizing anyone else to use, publish, or disclose "Proprietary Information" defined as:

> Any information of a confidential or proprietary or non-public nature relating to the business, financial condition and/or operations of Elias, including financial statements of Elias and supplementary information and documents concerning its operations; accounts receivable and payable;   principal contracts;   personnel; compilations of information, models and reports concerning its offerings, and any other of its technical and proprietary data; customer and prospect lists; sales techniques, marking surveys and data;  supplier arrangements;  pricing and profit margins;  and methods of operations.

ECF No. 29-1 at 7;  *see also* ECF No. 29 at ¶ 50.  Although the Portal Information does not rise to the level of a trade secret, it is plausible that the Portal Information is nevertheless "non-public"

information concerning Plaintiff's operation or pricing, especially since Plaintiff grants users unique login credentials and the Client Portal is not available to the general public.

Therefore, because Plaintiff alleges that Defendant procured the Portal Information, at least in part, from a breach of Mr. Hans' obligation to keep the Portal Information confidential, Plaintiff's Amended Complaint states a plausible claim of improper procurement and Defendant's Motion will be denied with respect to Count VI.

### E.     Plaintiff's Claim for Punitive and Exemplary Damages is not Cognizable as a Distinct Claim

In Count VIII of the Complaint, Plaintiff requests punitive and exemplary damages as authorized by DTSA, PUTSA, and Pennsylvania common law.[2]

DTSA and PUTSA both authorize exemplary damages in cases where a trade secret was willfully and maliciously appropriated.   18 U.S.C. § 1836(b)(3)(C) and 12 Pa. Cons. Stat. § 5304(b).  As discussed above, however, Plaintiff has failed to state a claim under either statute; therefore, Plaintiff's claim in Count VIII for exemplary damages under these statutes will be dismissed.

Pennsylvania common law recognizes punitive damages as an "extreme remedy available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984).  While punitive damages are often awarded in cases where a defendant's conduct led

---

[2] As the United States District Court for the Eastern District of Pennsylvania has noted as recently as March 2021, the terms "exemplary damages" and "punitive damages" are interchangeable;  statutory authorities favor the former and the common law favors the latter. *See Hirtle Calligan Holdings v. Thompson*, 2021 U.S. Dist. LEXIS 57888, at *2 (E.D. Pa. Mar. 26, 2021).

to physical injury, Pennsylvania law also allows punitive damage awards in intentional interference cases. *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923 (Pa. Super. Ct. 2013). Plaintiff contends that Defendant's conduct was "willful and malicious." ECF No. 29 at ¶ 130. Construing the facts in the light most favorable to Plaintiff and making reasonable inferences therefrom, its allegations that Defendant willfully and maliciously interfered with its contracts and prospective contractual arrangements is at least plausible. Plaintiff's allegations might reasonably be supported by facts revealed by discovery, and, therefore, the Court will deny Defendant's Motion to the extent Plaintiff requests common law punitive damages as a form of relief. That said, however, because punitive damages are a form of relief rather than an independent cause of action, Count VIII will be dismissed.

In sum, Plaintiff's claims for exemplary damages under the DTSA and PUTSA will be dismissed, and the remainder of Count VIII seeking punitive damages will also be dismissed, but Plaintiff's request for punitive damages in connection with its common law rights of action, Counts IV–VI, survive as a request for relief but not an independent cause of action.

## F.   Counts IX and X of the Amended Complaint Must be Dismissed Because Attorneys' Fees and Injunctive Relief are Remedies, Not Independent Causes of Action

Plaintiff seeks attorneys' fees in Count IX and injunctive relief in Count X, in connection with its DTSA and PUTSA claims. The DTSA and PUTSA only allow recovery of attorneys' fees by a "prevailing party." *See, e.g., Dunster Live, LLC v. Lonestar Logos Mgmt. Co. LLC*, 903 F.3d 948 (5th Cir. 2018); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F.Supp.3d 437, 438 (E.D. Pa. 2014). Since Plaintiff's claims under the DTSA and PUTSA will be dismissed, Plaintiff is not entitled to attorneys' fees; therefore, Count IX will be denied.

Similarly, Plaintiff's Count X claim for injunctive relief, as authorized DTSA and PUTSA, will be dismissed because Plaintiff has not stated a proper claim under the DTSA or PUTSA. Furthermore, an injunction is a remedy—not a separate cause of action.  Therefore, if Plaintiff elects to amend Counts II and III of the Complaint, it may include a request for injunctive relief and attorney fees as requests for relief, but not as a freestanding causes of action.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART as follows:

1.  Defendant's Motion to dismiss Count I (Computer Fraud and Abuse Act) is DENIED.

2.  Defendant's Motion to dismiss Count II (Defend Trade Secrets Act) is GRANTED without prejudice and with leave to amend.

3.  Defendant's Motion to dismiss Count III (Pennsylvania Uniform Trade Practices Act) is GRANTED without prejudice and with leave to amend.

4.  Defendant's Motion to dismiss Count IV (Tortious Interference with Contractual Relations) is DENIED.

5.  Defendant's Motion to dismiss Count V (Tortious Interference with Prospective Contractual Relations) is DENIED.

6.  Defendant's Motion to dismiss Count VI (Procurement of Information by Improper Means) is DENIED.

7.  Defendant's Motion to dismiss Count VIII (Punitive and Exemplary Damages) will be GRANTED, but Plaintiff's request for punitive damages under

Pennsylvania common law with respect to Counts IV–VI remains as a request for relief but not as a cause of action.

8.  Defendant's Motion to dismiss Count IX (Attorneys' Fees) will be GRANTED with prejudice, but a request for attorneys' fees may be reinstated as a request for relief if Plaintiff elects to amend Counts II and III.

9.  Defendant's Motion to Dismiss Count X (Injunctive Relief) will be GRANTED with prejudice, but may be reinstated as a request for relief if Plaintiff elects to amend Counts II and III.

An appropriate order will follow.

DATED this 26th day of May 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record