IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIAS INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff, | ) 2:20-CV-01011-CCW |
| | ) |
| v. | ) |
| | ) |
| KISSLER & CO. INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Before the Court is Plaintiff Elias Industries, Inc.'s ("Elias") Motion to Dismiss Defendant Kissler & Co, Inc.'s ("Kissler") counterclaims. ECF No. 77. For the reasons that follow, Elias' Motion will be GRANTED.

**I.     Background & Procedural History**

The procedural history was previously summarized in the Court's opinion granting in part and denying in part Kissler's Motion to Dismiss Elias' Amended Complaint. *See* ECF No. 69. Following that decision, Elias filed a Second Amended Complaint on June 10, 2021, which alleges violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 (Count I); tortious interference with existing contractual relations under Pennsylvania law (Count II); tortious interference with prospective contractual relations under Pennsylvania law (Count III); and procurement of information by improper means under Pennsylvania law (Count IV) arising out of Kissler's alleged accessing of Elias' internet-based customer portal without authorization to obtain information about Elias' product availability, customer-specific product pricing, purchase history,

1

and anticipated future purchases. *See* ECF No. 73. Kissler answered the Second Amended Complaint and alleged six counterclaims against Elias, which are described below. *See* ECF No. 74.

The facts as alleged by Kissler in its counterclaims against Elias are as follows. Kissler is a family-owned plumbing repair part manufacturer and distributor in New Jersey. ECF No. 74, Counterclaims ¶ 1.[1] Kissler sells a full range of plumbing supplies, parts, and equipment, including both Original Equipment Manufacturer ("OEM") and non-OEM parts, to manufacturers, retailers, and other distributors throughout the United States. *Id.* ¶¶ 2–3, 5. The sale of non-OEM parts comprises the overwhelming bulk of the company's revenues, and Kissler maintains an inventory of more than 30,000 parts. *Id.* ¶¶ 2–3.

Elias is a wholesale distributor of plumbing parts and represents to the marketplace that it only sells OEM parts. *Id.* ¶ 6. Kissler alleges that Elias advertises itself as a "a distributor of only genuine OEM parts" for well-known plumbing part brands and represents to the marketplace that its "genuine OEM parts" are manufactured by the Original Equipment Manufacturers whose names appear on those parts (the "OEM Representation"). *Id.* ¶¶ 7–8.

Kissler alleges that Elias uses the OEM Representation to differentiate itself and gain a competitive advantage, by contrasting its purported "OEM" parts with "'generic' parts manufactured by other competitors, including Kissler, which Elias characterizes as 'imitation' or 'lower-quality' parts." *Id.* ¶ 8.

Kissler alleges that the OEM Representation is false and misleading, because "Elias does not distribute 'only genuine OEM parts.'" *Id.* ¶¶ 9–10, 12–13. Instead, Kissler alleges that various

---

[1] All of the following citations in this section are to the "Counterclaims" section of Kissler & Co. Inc.'s Answer, Affirmative Defenses and Counterclaims Against Elias Industries, Inc., ECF No. 74.

parts sold by Elias are not manufactured by Original Equipment Manufacturers, but rather by third-party manufacturers. *Id.* ¶¶ 10–11. Kissler asserts that it has sustained loss of revenue, customers, goodwill, reputation, profits and market share, because current and prospective customers have not placed orders with Kissler as a result of their reliance on Elias' false and misleading statements. *Id.* ¶¶ 14–15.

On July 27, 2020, Kissler was served with Elias' complaint, which Kissler alleges contains misrepresentations. *Id.* ¶¶ 16–17. In mid-August 2020, Elias began disseminating its complaint to the marketplace by sending copies to customers, and Kissler believes that Elias' representatives have repeated the misrepresentations to customers and vendors in meetings, calls and/or written communications. *Id.* ¶¶ 18–19. Kissler has received inquiries from customers and venders who received an email copy of the complaint, who "expressed disappointment and questioned Kissler concerning the various factual statements." *Id.* ¶ 20. One of Kissler's customers, whose accounts total $500,000 over six years, terminated its business relationship with Kissler as a result of the customer's review of the complaint, and Kissler believes that other current and prospective customers have not placed orders with Kissler as a result of the statements disseminated by Elias. *Id.* ¶¶ 21–23. These facts underpin four of Kissler's counterclaims against Elias: Count I – Violation of the Lanham Act, 15 U.S.C. § 1125; Count II – Commercial disparagement; Count III – Defamation; Count IV – Unfair competition.

The remaining counterclaims seek attorney's fees (Count V – Attorneys' fees under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(D); and Count VI – Attorneys' fees under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. § 5305 (together, with Counts I–IV, the "Counterclaims"). Elias' original complaint did not include any trade secret misappropriation claims; instead, Elias added two counts of

misappropriation of trade secrets under Pennsylvania and federal law in its first amended complaint. *Id.* ¶¶ 26–30. The Court dismissed Elias' trade secret misappropriation claims without prejudice and with leave to amend; however, Elias' Second Amended Complaint does not include any misappropriation of trade secret claims. *Id.* ¶¶ 35–39. Kissler alleges that these trade secret misappropriation claims were brought in bad faith, because the first amended complaint failed to include factual allegations to support such claims, and therefore resulted in the incurrence of attorney's fees by Kissler. *Id.* ¶¶ 32–33, 40–44.

Elias now moves to dismiss Kissler's counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 77 & 79. The Motion is fully briefed and ripe for disposition.

**II.   Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id*. Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss").

**III.   Discussion**

    **A.   Failure to Comply with the Court's Interim Practices and Procedures**

As a preliminary matter, Kissler argues that Elias's Motion should be denied because Elias failed to comply with Section II.B of this Court's Interim Practices and Procedures (the "P&Ps"), which requires that the parties meet and confer before the filing of such a Rule 12(b) motion to determine whether any pleading defects are curable by amendment. In particular, Kissler notes that Elias' counsel reached out to Kissler's counsel approximately an hour before Elias filed the pending Motion, and thus, counsel were unable to meet and confer in any meaningful way. *See* ECF No. 83 at 5–6. When filing the pending Motion, Elias filed a "Certificate of Conferral," describing the attempt to contact Kissler's counsel and representing that the lack of a response "is not the result of any delay or untimeliness on Kissler's counsel's behalf." ECF No. 77; *see also*, ECF No. 80 (updated certificate of conferral stating that Kissler opposes the motion).

The Court has considered the above issues and will nonetheless proceed to consider the substantive grounds raised in the Motion. For the reasons discussed below, the Court is granting Elias' Motion, but allowing leave to amend on all counterclaims but the attorney's fees. If Kissler files amended counterclaims and Elias once again moves for dismissal, the parties must abide by the P&Ps' requirements including meaningfully conferring sufficiently in advance of any motion deadline—failure to do so will result in any future motion to dismiss being summarily denied.

**B.     Counts I through IV of Kissler's Counterclaims Will Be Dismissed with Leave to Amend**

Elias asserts that Kisslers' Counterclaims fall within the scope of the complaint, amended complaint, and/or Second Amended Complaint ("Complaints") and are subject to dismissal for various substantive reasons detailed below, which the Court does not reach here. ECF No. 79. Kissler responds that its Counterclaims are broader than the Complaints and encompass statements and actions by Elias that fall outside of the scope of the Complaints. ECF No. 83. In response to Kissler's assertion that it also seeks relief for statements and actions by Elias outside of the scope of the Complaints, Elias replies that such allegations lack sufficient specificity under Federal Rule of Civil Procedure 8. ECF No. 84 at 2–4. We do not decide here whether the allegations within the scope of the Complaints or the related dissemination of such Complaints do, or do not, state a claim under the applicable law. Because the within-scope allegations are so intertwined with the outside-scope allegations in each of Counts I through IV, and because the outside-scope allegations lack the requisite specificity under Rule 8, we will dismiss Kissler's counterclaims in Counts I through IV but provide Kissler leave to amend.

1.     **The Parties' Arguments**

Elias seeks dismissal of Kissler's non-attorney fee Counterclaims on multiple grounds, including (1) the affirmative defenses of judicial privilege,[2] conditional privilege,[3] and truth[4]; (2) the fact that Kissler's Lanham Act Claim (Count I) addresses non-commercial speech; (3) the fact that Kissler's Commercial Disparagement claim (Count II) does not concern the marketability of goods; and (4) the fact that Kissler cannot state a claim for unfair competition for the same reasons as those set forth with respect to Kissler's Lanham Act Claim. *See* ECF Nos. 77 & 79.

Kissler responds to these arguments specifically and further contends that Elias "flatly mischaracterizes" the scope of Kissler's Counterclaims. ECF No. 83 at 1. According to Kissler, the Counterclaims allege that Elias' statements and actions go *beyond* those contained in Elias' own Complaints and include communications "to customers and vendors *outside of the pleadings* and the context of this lawsuit." ECF No. 83 at 7 (citing ECF No. 74, Counterclaims at ¶¶ 7–10, 17–19) (emphasis original). Thus, Kissler contends that Elias' arguments in favor of dismissal, including those based on judicial privilege, noncommercial speech, and truth, are inapplicable. ECF No. 83 at 7.

Elias replies to Kissler's argument regarding the scope of the Counterclaims by invoking Rule 8's pleading standard and asserting that Kissler's Counterclaims do not specifically allege any action or statement by Elias that is outside the scope of the Complaints. ECF No. 84 at 2. Elias argues that, to the extent Kissler bases a claim on statements or actions *outside* of the

---

[2] *See* ECF No. 79 at 4–5 (seeking to preclude Kissler's Lanham Act claim (Count I), Common Law Tort claim for Commercial Disparagement Claim (Count II), Defamation claim (Count III), and Unfair Competition claim (Count IV)).
[3] *See* ECF No. 79 at 7–8 (seeking to preclude Kissler's Commercial Disparagement claim (Count II), Defamation claim (Count III), and Unfair Competition claim (Count IV)).
[4] *See* ECF No. 79 at 6–7 (seeking to preclude Kissler's Lanham Act claim (Count I), Common Law Tort claim for Commercial Disparagement claim (Count II), Defamation claim (Count III), and Unfair Competition claim (Count IV)).

Complaints, Kissler's Counterclaims fall short of the Rule 8 pleading standard. ECF No. 84 at 2–4 (contending "any details around *what* the offensive statements exactly consisted of, by *who* and to *whom* they were communicated, and *when* are conspicuously absent" from the Counterclaims (emphasis original)).

> 2.   **Rule 8 Standard**

Under the notice pleading standard from *Twombly*/*Iqbal* and Federal Rule of Civil Procedure 8, a plaintiff "must raise a right to relief above the speculative level" without resting on mere labels and conclusions. *Twombly*, 550 U.S. at 555. To set forth a plausible claim for relief, the plaintiff must show "more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Conclusory or bare bones allegations without factual support are insufficient to survive the plausibility standard. *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014).

District courts in the Third Circuit have outlined some particular considerations applicable to certain of the Counterclaims raised by Kissler. For a defamation claim, although it is true that "plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements," the plaintiff must "provide sufficient notice to defendants" in order to defend a claim. *Synthes (USA) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 U.S. Dist. LEXIS 19962 (E.D. Pa. Sep. 14, 2005); *Abdellatif v. Alza Wrae Indus. Co.*, No. 18-2297, 2019 U.S. Dist. LEXIS 45684, at *24 (E.D. Pa. Mar. 20, 2019) (finding that the allegation that defendant falsely told potential customers at a trade show that plaintiffs were under federal investigation was sufficient under Rule 8 to provide defendants with notice as to the content of the statement, who made the statement, and to whom the statement was made). Further, with respect to Lanham Act

claims,[5] some courts in the Third Circuit have adopted an intermediate standard of review between the notice pleading standard of Rule 8 and the heightened pleading standard of Rule 9, whereas others only apply Rule 8.  *Compare Liqwd, Inc. v. L'Oréal United States*, Civil Action No. 17-14-JFB-SRF, 2019 U.S. Dist. LEXIS 233336, at *12 n.4 (D. Del. Apr. 30, 2019) (applying the intermediate standard) *with Peloton Interactive v. Icon Heath & Fitness*, Civil Action No. 20-662-RGA, 2021 U.S. Dist. LEXIS 101436, at *13 (D. Del. May 28, 2021) (applying Rule 8 and noting disagreement within the Third Circuit).

### 3. Counts I through IV of Kissler's Counterclaims Do Not Provide Sufficient Factual Allegations to Raise a Right to Relief and Will Be Dismissed

Kissler's Counterclaims undisputedly encompass statements and actions that concern the contents of the Complaints or Elias' dissemination thereof.  *See e.g.*, ECF No. 74, Counterclaims ¶¶ 20–22 (alleging that Elias' dissemination of the complaint resulted in loss of sales); *see also*, ECF No. 83 at 9 (arguing that the Court's prior decision does not preclude Kissler from bringing state law claims based on Elias' dissemination of the complaint to customers); *see also* ECF No. 79 at 3, 5 (cataloguing statements in the Counterclaim that "com[e] directly from Elias's pleadings").

However, the bulk of Kissler's Response to Elias' Motion to Dismiss argues that the Counterclaims also address statements and actions that fall *outside* of the Complaints in this action.  *See* ECF No. 83 at 7–8 (contending that Kissler's Counterclaims "are broader than the false and misleading statements made by Elias in its Complaint…").  For example, Kissler argues that its Counterclaims include whether "Elias' OEM Representation to the plumbing parts marketplace

---

[5] The parties agree that "the elements for a common law unfair competition claim are identical" to those of a claim of unfair competition under the Lanham act.  *See Mazcon v. BEG Grp. LLC*, No. 1:19-CV-40, 2020 U.S. Dist. LEXIS 142397, at *16 (W.D. Pa. Aug. 10, 2020) (Baxter, J.); *see* ECF No. 83 at 12–13;  ECF No. 79 at 10.

would be actionable under the Lanham Act or state law unfair competition." ECF No. 83 at 9. Kissler also claims "that Elias advertises itself (in its marketing materials and on its parts) to customers using the OEM Representation and that the litany of Elias' false statements in the Complaint were communicated to customers and vendors outside of the pleadings and the context of this lawsuit." *Id.* at 7.

In describing the "ample misconduct" alleged to have occurred *outside* the Complaints in this action, Kissler contends that Elias (1) falsely "markets and advertises itself as a 'distributor of only genuine OEM parts,'" (2) contrasts its "purported OEM parts" by describing Kissler's parts as "imitation" or "lower-quality" to industry participants (3) "misleads customers to select its products over competitors (including Kissler) 'on the mistaken belief that Elias' products are "genuine OEM parts,"'" (4) communicates misrepresentations "through its marketing or sales materials" but also "to customers and vendors in meetings, calls and/or written communications," and (5) has caused numerous current and prospective customers to not place orders with Kissler, who has suffered "loss of revenues, customers, goodwill, reputation, profits and market share." ECF No. 83 at 10–11 (citing ECF No. 74, Counterclaims ¶¶ 7–15).

Despite Kissler's contention that the "Counterclaims permit no inference… that Elias limited the distribution of the false and misleading statements to [the Complaints]," the Counterclaims are vague with respect to these alleged statements or actions. Kissler asserts that Elias has made the false and misleading OEM Representation, among other unidentified statements, in the "marketplace" or "in marketing or sales materials" without further detail, or that it made repeated "misrepresentations [in the Complaints] to customers and vendors in meetings, calls and/or written communications." *See* ECF No. 83 at 2–3, 7 (citing examples). As Elias notes, Kissler's Counterclaims do not contain any details with respect to the actions or statements, such

10

as the content, author, or recipients of such statements. ECF No. 84 at 4. Therefore, considering the factual allegations in the light most favorable to Kissler as the non-moving party, the Counterclaims fail to satisfy Rule 8 with respect to the alleged statements and actions that fall *outside* the scope of the Complaints.

Although Kissler does not necessarily have to identify each defamatory statement, author, or recipient, the general allegations regarding the OEM Representation and other statements made outside of this action do not provide sufficient notice for Elias to defend itself. *Cf. Synthes (USA)*, 2005 U.S. Dist. LEXIS 19962, at 5–8 (finding sufficient under Rule 8 eight enumerated statements made by company representatives, such as that "[plaintiff] was going to put [defendant] out of business because [plaintiff] has infringed [defendant's] patent" or "falsely stated that [defendant's] products have failed after implementation, specifically, that cervical plates were breaking and screws were backing out" made by company representatives). Here, the various misrepresentations have purportedly been made in a wide array of potential settings including the "marketplace," "marketing or sales materials," and/or "to customers and vendors in meetings, calls and/or written communications." *Cf. Abdellatif*, 2019 U.S. Dist. LEXIS 45684, at *24 (finding that the allegation that defendant falsely told potential customers at a trade show that plaintiffs were under federal investigation was sufficient under Rule 8).

Each of Counts I through IV intertwine both statements and actions *outside* of the Complaints as well as certain statements and actions *within the scope* of the Complaints and the related dissemination. For example, each of Counts I through IV incorporate all the previous factual allegations, which include not only certain statements and actions *within the scope of* the Complaints and the dissemination, but also statements and actions that Kissler asserts occurred *outside* the scope of the Complaints. *See* ECF No. 74 ¶¶ 45, 56, 63, 70. Further, each of Counts I

through IV references in general "false, misleading and deceptive representations" or "false, misleading and deceptive statements," thereby bundling the statements and actions related to the Complaints and the related dissemination with those that Kissler argues have occurred outside of this action. *See id.* ¶¶ 45–72.

Because the within-scope allegations are so intertwined with the outside-scope allegations, *see* ECF No. 83 at 10, and because the outside-scope allegations lack the requisite specificity under Rule 8, we will dismiss Kissler's counterclaims in Counts I through IV but provide leave to amend. *See EEOC v. Ruby Tuesday, Inc.*, 919 F. Supp. 2d 587, 592 (W.D. Pa. 2013) (Hornak, C.J., then-J.) ("*Twombly* and *Iqbal* stand for (at least) the proposition that the 'notice' required by federal notice pleading means that the pleader must give notice not merely of the existence of a claim, but of the plausible factual foundation for that claim."). In doing so, we do not decide here whether allegations that are within the scope of the Complaints or the related dissemination of such Complaints do, or do not, state a claim under the applicable law.

### C. Claims for Attorney's Fees under the PUTSA and DTSA (Count V & VI) Will Be Dismissed Because They are Not Independent Causes of Action

Both the DTSA[6] and the PUTSA[7] allow for the recovery of attorneys' fees by a prevailing party if a claim of misappropriation of trade secrets is made in bad faith. Among other grounds, Elias' seeks dismissal of Kissler's attorneys' fee claims because such claims are not independent causes of action. ECF No. 79 at 11. Kissler responds by identifying cases outside of the Third Circuit that have permitted attorneys' fees counterclaims under the DTSA and the state law

---

[6] DTSA's fee-shifting provision (18 U.S.C. § 1836(b)(3)(D)) provides that "if a claim of the misappropriation is made in bad faith, … [a court may] award reasonable attorney's fees to the prevailing party."
[7] Similarly, under the PUTSA's fee-shifting provision (12 Pa.C.S. § 5305), a "court may award reasonable attorney fees, expenses and costs to the prevailing party: (1) if a claim of misappropriation is made in bad faith…."

equivalent as independent causes of action, but Kissler provides no such case law in the Third Circuit or in Pennsylvania state courts. *See* ECF No. 83 at 19–20.

Courts in this district have consistently recognized that claims for attorneys' fees under the DTSA and PUTSA are not independent causes of action and should be made through a motion. *Warman v. Local Yokels Fudge, LLC*, 2021 U.S. Dist. LEXIS 3363, at *13 (W.D. Pa. Jan. 8, 2021) (Dodge, M.J.) (citing Fed. R. Civ. P. 54(d)(2)(A) ("a claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages")); *see Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 455 (E.D. Pa. 2014) (§ 5305 of the PUTSA does not state an independent cause of action, but rather authorizes a prevailing party to seek attorney's fees by appropriate motion); *Peek v. Whittaker*, 2014 U.S. Dist. LEXIS 70461, at *8 (W.D. Pa. May 22, 2014) (Hornak, J.) ("courts have routinely considered Section 5305 claims on a motion following either summary judgment or trial").

Thus, Kissler's claims for attorney's fees under DTSA and PUTSA are not independent causes of action and Counts V and VI will be dismissed. As such, the Court need not address the parties' arguments regarding bad faith and who is a prevailing party at this time. However, the Court will dismiss these claims without prejudice to Kissler's ability to move for attorneys' fees under DTSA and PUTSA in accordance with Fed. R. Civ. P. 54(d)(2). *See* ECF No. 83 at 17 (requesting dismissal without prejudice to move for attorneys' fees by appropriate motion).

### IV. Conclusion

For the reasons set forth above, Elias' Motion to Dismiss Kissler's Counterclaims will be GRANTED as set forth in the accompanying ORDER.

DATED this 29th day of March 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record