IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIAS INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:20-cv-01011-CCW |
| | ) | |
| v. | ) | |
| | ) | |
| KISSLER & CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**KISSLER & CO. INC.'S ANSWER, AFFIRMATIVE DEFENSES
AND AMENDED COUNTERCLAIMS AGAINST ELIAS INDUSTRIES, INC.**

Kissler & Co., Inc. ("Kissler"), by and through its counsel, Dentons Cohen & Grigsby P.C., files the following Answer, Affirmative Defenses and Amended Counterclaims against Elias Industries, Inc. ("Elias").

1.    Admitted.

2.    Admitted.

3.    This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

4.    Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.  It is expressly denied that Kissler "committed unlawful acts."

5.    Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

6.    Denied.  This Paragraph is an introductory paragraph to which no response is required.  Further, this Paragraph contains legal conclusions and argument to which no response is required.  To the extent a response is required, those allegations are denied.  Kissler incorporates by reference its responses to Paragraphs 8-71.

7.      Denied.  This Paragraph is an introductory paragraph to which no response is required.  To the extent a response is required, those allegations are denied.  Kissler incorporates by reference its responses to Paragraphs 8-71.

8.      Denied in part and admitted in part.  It is admitted only that Elias is a Pennsylvania-based business, and that Tapco is a division of Elias.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

9.      Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

10.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

11.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

12.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

13.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.  It is expressly denied that the "marginal revenue" of any particular seller

in the "plumbing part" industry is any more "important" than is typical in any competitive industry.

14.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

15.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

16.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

17.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.  It is expressly denied that Elias is a "distributor of only genuine OEM parts."

18.     Denied in part and admitted in part.  It is admitted only that OEM manufacturers may not honor a part's warranty if it is used with a part from another manufacturer.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

19.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those

allegations are denied.  It is expressly denied that Elias is a "distributor of only genuine OEM parts."

20.     Denied in part and admitted in part.  It is admitted only that Kissler manufactures and sells plumbing parts.  The remaining allegations in this Paragraph are denied.  It is expressly denied that Elias is a "distributor of only genuine OEM parts."

21.     Denied in part and admitted in part.  It is admitted only that Plaintiff maintains a so-called "Client Portal," access to which it provides to third parties.  It is further admitted, upon information and belief, that the Client Portal contains basic product pricing and availability information and allows third parties to place and track orders with Elias.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remainder of allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

22.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

23.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

24.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

25.     Denied in part and admitted in part.  It is admitted only that Elias has never provided to Kissler "login and passwords" to the Client Portal.  After reasonable investigation,

Kissler is without sufficient information to admit or deny the remainder of the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

26.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

27.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

28.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

29.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

30.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

31.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

32.     Denied. After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph. To the extent a response is required, those allegations are denied.

33.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

34.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

35.     Denied in part and admitted in part.  It is admitted only that L.A.S. Replacement Parts, Inc. ("L.A.S.") is located in the Bronx borough of New York City.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remainder of the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

36.     Denied in part and admitted in part.  It is admitted only that Kissler's offices are located in Carlstadt, New Jersey.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remainder of the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

37.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

38.     Denied in part and admitted in part.  It is admitted that Kissler had previously done business with Elias, and Elias discontinued that business relationship.  It is also admitted that Elias has never provided to Kissler "login and passwords" to the Client Portal.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remainder of the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

39.     Denied in part and admitted in part.  It is admitted only that Elias used L.A.S.'s login credentials, pursuant to L.A.S.'s knowledge and approval, to access the Client Portal in connection with Kissler's purchase of products from L.A.S.  After reasonable investigation, Kissler is without sufficient information to admit or deny as to what Elias "watched."  The remaining allegations in this Paragraph are denied.

40.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

41.     Denied in part and admitted in part.  It is admitted only that Kissler used L.A.S.'s login credentials, pursuant to L.A.S.'s knowledge and approval, to access the Client Portal in connection with Kissler's purchase of products from L.A.S.   After reasonable investigation, Kissler is without sufficient information to admit or deny the specific dates on which it may have accessed the Client Portal.  Those and the remaining allegations in this Paragraph are denied.

42.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

43.     Denied.  This Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.  Further, this Paragraph contains argument, to which no response is necessary.  To the extent a response is required, those allegations are denied.

44.     Denied.  This Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.  Further, this Paragraph contains argument, to which no

response is necessary.  Finally, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph concerning the purported interactions or communications between L.A.S. and Elias.  To the extent a response is required, those allegations are denied.

45.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  Further, this Paragraph contains argument, to which no response is necessary.  To the extent a response is required, those allegations are denied.

46.     Denied in part and admitted in part.  It is admitted only that Hans was formerly employed by Kissler.  It is also admitted that Hans advised Kissler's management that he had access to the Client Portal.  Hans accessed the Client Portal on occasion to obtain pricing and availability information for certain parts that Kissler continued to order from L.A.S.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remainder of the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

47.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.  Further, this Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.

48.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

49.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.  Further, this Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.

50.     Denied.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Hans.  To the extent a response is required, those allegations are denied.

51.     Denied.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Hans.  To the extent a response is required, those allegations are denied.

52.     Denied.  This Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.  Further, this Paragraph contains legal conclusions and argument to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Hans.  To the extent a response is required, those allegations are denied.

53.     Denied.  Rather, Hans accessed the Client Portal on occasion to obtain pricing and availability information for certain parts that Kissler continued to order from L.A.S.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

54.     Denied.  Rather, Hans accessed the Client Portal on occasion to obtain pricing and availability information for certain parts that Kissler continued to order from L.A.S.  After

reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

55.    After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern the dates and times of Hans' alleged access of the Client Portal during the time period set forth in that Paragraph.  To the extent a response is required, those allegations are denied.

56.    Denied.  This Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.  Further, this Paragraph contains legal conclusions and argument to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Hans.  To the extent a response is required, those allegations are denied.

57.    Denied.  This Paragraph is denied insofar as it seeks to characterize the contents, meaning, or implication of a written document that speaks for itself and is the best and most reliable evidence of its contents.  Further, this Paragraph contains legal conclusions and argument to which no response is required.  To the extent a response is required, those allegations are denied.

58.    Denied.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Hans.  To the extent a response is required, those allegations are denied.

59.    Denied.  This Paragraph contains legal conclusions and argument to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph as they concern Elias' purported

"beliefs."  Finally, this Paragraph is denied insofar as it seeks to characterize the contents,
meaning, or implication of a written document that speaks for itself and is the best and most
reliable evidence of its contents.

60.     Denied.

61.     Denied.

62.     Denied.  This Paragraph contains legal conclusions and argument to which no
response is required.  To the extent a response is required, those allegations are denied.

63.     Denied.  This Paragraph is denied insofar as it seeks to characterize the contents,
meaning, or implication of a written document that speaks for itself and is the best and most
reliable evidence of its contents.  Further, this Paragraph contains legal conclusions and
argument to which no response is required.  To the extent a response is required, those
allegations are denied.

64.     Denied.

65.     Denied.  This Paragraph contains argument to which no response is required.  To
the extent a response is required, it is denied that Elias' "discounted price . . . is closely
guarded."

66.     Denied.  This Paragraph contains argument to which no response is required.  To
the extent a response is required, those allegations are denied.

67.     Denied.  This Paragraph contains argument to which no response is required.  To
the extent a response is required, those allegations are denied.

68.     Denied.  This Paragraph contains argument to which no response is required.  To
the extent a response is required, those allegations are denied.

69.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, it is denied that any alleged actions of Kissler "caused" any damages or harm to Elias.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

70.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, it is denied that any alleged actions of Kissler "caused" any damages or harm to Elias.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

71.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, it is denied that any alleged actions of Kissler "caused" any damages or harm to Elias.  After reasonable investigation, Kissler is without sufficient information to admit or deny the remaining allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

## <u>COUNT I</u>
### Computer Fraud and Abuse Act – 18 U.S.C. § 1030

72.     Paragraph 72 is an incorporation clause, to which no response is required.  Kissler incorporates its responses to the prior allegations as if set forth fully herein.

73.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

74.     Denied.  After reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

75.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

76.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

77.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

78.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

79.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

80.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

81.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

<u>**COUNT II**</u>
**Tortious Interference with Existing Contractual Relations**

82.     Paragraph 82 is an incorporation clause, to which no response is required.  Kissler incorporates its responses to the prior allegations as if set forth fully herein.

83.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

84.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

85.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

86.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

87.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

## COUNT III
### Tortious Interference with Prospective Contractual Relations

88.     Paragraph 88 is an incorporation clause, to which no response is required.  Kissler incorporates its responses to the prior allegations as if set forth fully herein.

89.     Denied.  This Paragraph contains legal conclusions to which no response is required.  Further, after reasonable investigation, Kissler is without sufficient information to admit or deny the allegations in this Paragraph.  To the extent a response is required, those allegations are denied.

90.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

91.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

92.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

93.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

## COUNT IV
## Procurement of Information by Improper Means

94.     Paragraph 94 is an incorporation clause, to which no response is required.  Kissler incorporates its responses to the prior allegations as if set forth fully herein.

95.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

96.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

97.     Denied.  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, those allegations are denied.

## JURY DEMAND

98.     Paragraph 98 is a demand for a jury trial, to which no response is required.

## AFFIRMATIVE DEFENSES

99.     Kissler incorporates by reference its Answers to Paragraphs 1 – 98 of Plaintiff's Second Amended Complaint as if set forth fully herein.

100.     Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted.

101.     Plaintiff's claims are barred because it has not suffered any damages or harm.

102.     Plaintiff's claims are barred by its own negligent or intentional conduct and/or the conduct of others.

103.     Plaintiff's claims are barred by Plaintiff's misrepresentations, intentional, reckless or negligent, and/or fraud, including, without limitation, Plaintiff's false and misleading representations to prospective purchasers that it sells only "Genuine OEM" or "Genuine" parts, and that various parts it sells are, in fact, "genuine OEM" parts.

104.    Plaintiff's claims are barred by Plaintiff's failure to mitigate its purported damages.

105.    Plaintiff's claims are barred in whole or in part by laches.

106.    Plaintiff's claims are barred in whole or in part by waiver.

107.    Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

108.    Plaintiff's conduct is not the proximate cause of any damage or harm claimed by Plaintiff (the existence of which is denied).

109.    Plaintiff's claims are barred in whole or in part as a result of Plaintiff's conduct set forth below in Paragraphs 1 – 89 of Kissler's Amended Counterclaims, which are incorporated by reference herein.

110.    Kissler reserves the right to raise any additional defenses not asserted herein of which it may become aware through discovery or other investigation and further reserves the right to Amend this Answer, Affirmative Defenses and Amended Counterclaims.

WHEREFORE, Defendant Kissler & Co., Inc. respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff Elias Industries, Inc. with respect to all counts of the Second Amended Complaint, together with fees, costs, and such other and further relief as the Court deems to be just and fair.

## <u>AMENDED COUNTERCLAIMS</u>

A.    **The Parties**

1.    Kissler is a family-owned plumbing repair part manufacturer and distributor located in Carlstadt, New Jersey.  The company was founded 94 years ago in New York City.

2.    Kissler sells a full range of plumbing supplies, parts and equipment, including

supply lines, valves, toilet and sink repair and replacement parts, handles and trim, as well as a line of premium faucets.  The company's product portfolio includes both older, hard-to-find items as well as contemporary parts.  Although Kissler sells both Original Equipment Manufacturer ("OEM") and non-OEM parts, the sale of non-OEM parts comprises the overwhelming bulk of the company's revenues.

3.      Kissler maintains an inventory of more than 30,000 parts, many of which are produced at the company's 80,000-square foot manufacturing and distribution facility located in New Jersey.  Kissler sells its products to customers located throughout the United States.

4.      The success of Kissler's business depends upon its ability to maintain long-term business relationships with its customers.  To that end, the company has devoted significant resources to develop and maintain its reputation for quality, integrity, product knowledge and customer service.  The company's reputation and goodwill are vital to its ability to maintain its competitive position in the marketplace.

5.      Kissler does not sell its products to end-users.  Rather, the company sells products to manufacturers, retailers, and other distributors.  Given the nature of the plumbing parts supply industry, competitors often purchase products from one another and in that sense occasionally constitute each other's customers and suppliers.

6.      Elias is a wholesale distributor of plumbing parts.  It conducts business through its "Tapco Genuine Parts Center" division.  Unlike Kissler, Elias represents to the marketplace that it only sells "OEM parts" – i.e., parts manufactured by Original Equipment Manufacturers ("OEM").  Kissler and Elias compete in interstate commerce with respect to certain parts.

**B.**     **Elias Falsely Advertises that it Sells "Only Genuine OEM" Plumbing Parts.**

7.     Elias markets and advertises itself as a "a distributor of only genuine OEM parts" for well-known plumbing part brands, including Kohler, American Standard, Moen and others. Elias represents to the marketplace that its "genuine OEM parts" are manufactured by the Original Equipment Manufacturers whose names appear on those parts or that are otherwise marketed as such by Elias (the "OEM Representation").

8.     For example and without limitation, Elias' internet home page is located at the website address "tapcogenuinepartscenter.com."  On its website, Elias currently represents itself as a seller of "Genuine OEM plumbing parts and kits."

9.     Elias's website also contains links to several of its "Product Lines" pages, including what it describes as "Commercial and Industrial Lines," "High-End Decorator Lines," and "Residential Lines."  On each of those subpages, "Elias represents itself as having "Genuine Parts" for numerous Original Equipment Manufacturers, including Moen, Kohler, Grohe, and American Standard.

10.     Upon information and belief, Elias offers for sale numerous specific plumbing parts through its online "portal" that it identifies and describes to prospective purchasers as "Genuine OEM" and "Genuine" parts.

11.     Upon information and belief, Elias' sales employees routinely represent to prospective purchasers that Elias offers for sale only "Genuine OEM" and "Genuine" parts in response to customer inquiries received via telephone and email, and they otherwise identify and describe specific plumbing parts to prospective purchasers as "Genuine OEM" and "Genuine" parts.

12.     Upon information and belief, Elias employees routinely disseminate quotes to prospective purchasers of its products that identify and describe Elias' products as "Genuine OEM" and "Genuine" parts.

13.     Upon information and belief, Elias also markets various of its products as "Genuine OEM" and "Genuine" parts on third-party plumbing parts websites.

14.     Elias has previously represented and admitted in this litigation that it holds itself out to the marketplace as a "a distributor of only genuine OEM parts."

15.     Elias seeks to differentiate itself, and to obtain a competitive advantage, in the marketplace, by contrasting its purported "OEM" parts with the so-called "generic" parts manufactured by other competitors, including Kissler, which Elias characterizes as "imitation" or "lower-quality" parts.

16.     The OEM Representation is false and misleading, and Elias knows as much.

17.     Elias does not distribute "only genuine OEM parts."  More specifically, upon information and belief, various parts sold by Elias are not manufactured by the OEMs whose names appear on those parts or whose names Elias attributes to such parts on its website, on its quotes or in its communications with prospective purchasers. Upon information and belief, numerous parts sold by Elias as "Genuine OEM" or "Genuine" are, in fact, manufactured *for Elias* by third-party manufacturers located in China and other countries, pursuant to drawings or specifications provided to those manufacturers by Elias, in accordance with contractual toll manufacturing agreements between Elias and such third parties (the "Non-OEM Manufacturers").

18.     Upon information and belief, the Non-OEM Manufacturers are not owned by and have no affiliation with any of the OEM manufacturers whose parts Elias markets as such.

19.     In other words, various products that Elias markets as "genuine OEM parts" and "genuine" parts are the exact same non-OEM parts that are marketed and sold by Elias' competitors, including Kissler.

20.     Through the OEM Representation, Elias misleads purchasers of its products to pay higher prices and otherwise to select Elias' products over those of its competitors, including Kissler, on the mistaken belief that Elias' products are "genuine OEM parts" and are therefore superior.

21.     As a consequence, upon information and belief, numerous current and prospective customers of Kissler have not placed orders with Kissler as a result of their reliance upon the false and misleading statements made by Elias.

22.     As a result of Elias' false and misleading statements, Kissler has suffered and is suffering the loss of revenues, customers, goodwill, reputation, profits and market share.

**C.     Elias Disparages Kissler and Its Business Activities**

23.     On July 27, 2020, Kissler was served with a complaint that Elias had previously filed in this lawsuit.

24.     Elias' complaint contains various false statements concerning Kissler and its business activities in a manner the leads the reader to believe that Kissler has engaged in fraudulent, illegal, dishonest, immoral, tortious and otherwise improper conduct.  In particular, the complaint contains at least the following misrepresentations of fact (among many others):

(a) Between September and November of 2018, Kissler accessed Elias's so-called "Client Portal" using the log-in credentials of "L.A.S. Replacement Parts, Inc.," without authorization;

(b) In November of 2018, Kissler accessed Elias's Client Portal using the login credentials of Ken Hans, a former Elias employee, without authorization;

(c) During the period between November, 2018, and July, 2019, Kissler accessed Elias's Client Portal multiple times using the log-in credentials of various Elias clients;

(d) Kissler improperly obtained "extremely valuable information" belonging to Elias from its access to the Client Portal "prior to and after September 2018";

(e) Kissler obtained "a significant strategic, competitive advantage" against Elias from its access to the Client Portal;

(f) Kissler used the information it obtained on the Client Portal to "market the competing products to [Elias] customers under more favorable terms";

(g) Kissler "fraudulently" accessed the Client Portal;

(h) Elias has "suffered hundreds of thousands—if not millions of dollars—in lost profits and other costs as a result of" Kissler's "Fraudulent Access" to the Client Portal;

(i) Kissler has violated the Computer Fraud and Abuse Act;

(j) Kissler "purposefully intended to interfere with [Elias'] existing contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's clients under more favorable terms";

(k) Kissler "purposefully intended to interfere with [Elias'] prospective contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's potential clients under more favorable terms"; and

(l) "As a direct and proximate result of Kissler's acts, [Elias] has and continues to suffer irreparable injury for which there is no adequate remedy at law."

25.    In mid-August 2020, Elias began disseminating its complaint to the marketplace, including, without limitation, by sending copies of the complaint via email to at least twelve customers: Central Plumbing Specialties, General Plumbing Supply (New Jersey), Hajoca Corporation, Webster Plumbing Supply, Banner Plumbing Supplies, Allied Plumbing & Heating Supply Co., Plimpton & Hills, ARPNY, Southam Boy Plumbing, Go Atlantic, FW Webb, and Bell Ridge Plumbing Supply.

26.     Upon information and belief, Elias representatives repeated the aforementioned misrepresentations in communications with other prospective customers..

27.     As a direct result of Elias' actions, Kissler received inquiries from several of its customers and vendors, which informed Kissler that they had reviewed a copy of Elias' complaint.  Those customers and vendors expressed disappointment and questioned Kissler concerning the various factual statements set forth in that document.

28.     Also in August of 2020, one of Kissler's significant customers, Faucet Shark, Inc., terminated its business relationship with Kissler after that customer reviewed the misrepresentations contained in Elias' complaint.  A Faucet Shark, Inc. representative informed Kissler that Kissler's business practices were "immoral," and that that company does not conduct business with "immoral people."  That Faucet Shark, Inc. representative further advised Kissler that that company would no longer purchase any products from Kissler.  Kissler's business relationship with Faucet Shark, Inc. accounted for approximately $500,000 in sales during the previous six years.

29.     Until Faucet Shark, Inc. received a copy of Elias' complaint and Elias' communication, Kissler reasonably anticipated future sales from Faucet Shark Inc. consistent with the parties' past practice.

30.     Upon information and belief, other current and prospective customers of Kissler have not placed orders with Kissler as a result of the false and misleading statements disseminated by Elias.

31.     As a result of Elias' baseless smear campaign, Kissler has suffered and is suffering the loss of revenues, customers, goodwill, reputation, profits and market share.

32.     Given the nature of wholesale plumbing supply industry, it is not possible for

Kissler to assess all of the sales it has lost and stands to lose as a result of Elias' actions.  In particular, potential customers typically do not advise Kissler when they decide to purchase products from one of Kissler's competitors.  Nor do customers typically explain to suppliers the reasons for their decision to purchase products from a competitor.

**D.    Elias Asserts Trade Secret Misappropriation Claims Against Kissler in Bad Faith.**

33.    Elias' original Complaint, filed on July 6, 2020, (ECF 1), did not include any trade secret misappropriation claims.

34.    In response to Elias' original Complaint, Kissler's counsel advised Elias' counsel, in detail, that Elias' original Complaint was legally deficient and requested Elias to dismiss the complaint, in accordance with Section 2(d) of Judge Marilyn Horan's Standing Order and Procedures on Civil Motion Practice, to whom this case was then assigned.

35.    The parties met and conferred with respect to Kissler's objections, but Elias did not amend or dismiss its original Complaint.

36.    On September 16, 2020, Kissler filed its motion to dismiss Elias' original Complaint.  (ECF 15-16.)

37.    On October 7, 2020, Elias filed its First Amended Complaint.  (ECF 29.)

38.    In its First Amended Complaint, Elias for the first time asserted claims against Kissler for misappropriation of trade secrets under Pennsylvania and federal law.

39.    The First Amended Complaint does not contain additional factual allegations that could support a trade secret misappropriation claim against Kissler.

40.    Elias asserted its trade secret misappropriation claims against Kissler in bad faith, in response to Kissler's motion to dismiss.

41.     On October 21, 2020, Kissler filed its motion to dismiss Elias' First Amended Complaint.  (ECF 36-37.)

42.     In an order dated May 26, 2021, this Court dismissed, without prejudice, Elias's trade secret misappropriation claims for failure to state a claim upon which relief may be granted (ECF 69-70).

43.     In its Order, the Court concluded that Elias' First Amended Complaint failed to allege facts necessary to establish three of the four definitional prongs used by courts to evaluate trade secret misappropriation claims.

44.     Nevertheless, the Court provided Elias with the opportunity to file a second amended complaint to allege facts necessary to establish that any of Elias' information at issue qualifies for trade secret protection under the statutes.

45.     Elias filed its Second Amended Complaint on June 10, 2021.  (ECF 73.)

46.     Elias' Second Amended Complaint does not include any trade secret misappropriation claims against Kissler.

47.     When it filed its First Amended Complaint, Elias knew and certainly should have known that (i) it did not take any meaningful steps to maintain the secrecy of the information at issue; (ii) the information at issue is readily ascertainable by proper means; and (iii) the information at issue is not a data compilation or other proprietary information that merits trade secret protection.

48.     Elias' First Amended Complaint also fails to include any factual allegations permitting the inference that Kissler had ever used or disclosed any of the information at issue to the detriment of Elias.

49.     The First Amended Complaint used false and inflammatory language, baselessly speculating that Kissler orchestrated an elaborate scheme of wrongdoing to misappropriate Elias' alleged trade secret information based solely on Kissler's purported access to the Client Portal.

50.     The presence of those claims and Elias' inflammatory allegations served to demean and disgrace Kissler in the public eye and in the eyes of its current, former, and potential customers and other business associates.

51.     Kissler has incurred attorneys' fees in responding to Elias' baseless trade secret misappropriation claims.

### COUNT I
**Violation of The Lanham Act (15 U.S.C. § 1125)**

52.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

53.     Both Kissler and Elias have customers throughout the United States, and Kissler's and Elias' products are used in interstate commerce.

54.     Elias has disseminated or permitted the dissemination of, and continues to disseminate or permits the dissemination of, false, misleading and deceptive representations regarding the nature, characteristics, quality, approval and certification of Elias and its products through commercial advertising or promotion, including the OEM Representation in the following particulars (among others):

     a)    Representations made by Elias to prospective purchasers on its website and on third-party websites that it is a seller of "Genuine OEM" and "Genuine" parts, and that identify and describe specific plumbing parts as "Genuine OEM" and "Genuine" parts;

     b)    Representations made by Elias to prospective purchasers through its online "portal" that various parts offered for sale by Elias are "Genuine OEM" and "Genuine" parts;

25

    c)    Representations made by Elias' sales employees to prospective purchasers that Elias offers for sale "Genuine OEM" and "Genuine" parts in response to customer inquiries received via telephone and email;

    d)    Representations made by Elias' sales employees to prospective purchasers that identify and describe specific plumbing parts as "Genuine OEM" and "Genuine" parts; and

    Representations made by Elias in quotes issued to prospective purchasers that that identify and describe Elias' products as "Genuine OEM" and "Genuine" parts.

55.    Elias' false, misleading and deceptive representations have deceived and tended to deceive – and continue to deceive and to tend to deceive – a substantial portion of the intended audience, including Kissler's and Elias' customers and potential customers.

56.    Elias' false, misleading and deceptive representations are material and have influenced, and are likely to continue to influence, the purchasing decisions of potential purchasers of plumbing parts, including Kissler's and Elias' customers and potential customers.

57.    Elias' false, misleading and deceptive representations have caused, and will continue to cause, actual confusion among potential purchasers of plumbing parts, including, without limitation, Kissler's and Elias' customers and potential customers, regarding the nature, characteristics, quality, approval and certification of Elias' products.

58.    Elias made the false, misleading and deceptive representations at issue knowing those statements to be false and misleading, and with the specific intent to harm Kissler, thereby diverting sales and profits from Kissler to Elias.

59.    Elias undertook the misconduct at issue in bad faith and without any justification.

60.    As a direct result of Elias' false, misleading and deceptive representations, Kissler has suffered damages.

61.     In addition, as a direct result of Elias' false, misleading and deceptive representations, Kissler has suffered, and continues to suffer, irreparable harm, including the loss of business opportunities, goodwill, reputation, profits and market share.

62.     Unless enjoined, Elias' false, misleading and deceptive representations will continue to cause irreparable harm to Kissler for which there is no adequate remedy at law.

<u>COUNT II</u>
**Commercial Disparagement**

63.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

64.     Elias made a series of false statements concerning Kissler and its business activities in a manner the leads the reader to believe that Kissler has engaged in fraudulent, illegal, dishonest, immoral, tortious and otherwise improper conduct, including the following statements (among others):

(a) Between September and November of 2018, Kissler accessed Elias's so-called "Client Portal" using the log-in credentials of "L.A.S. Replacement Parts, Inc.," without authorization;

(b) In November of 2018, Kissler accessed Elias's Client Portal using the login credentials of Ken Hans, a former Elias employee, without authorization;

(c) During the period between November, 2018, and July, 2019, Kissler accessed Elias's Client Portal multiple times using the log-in credentials of various Elias clients;

(d) Kissler improperly obtained "extremely valuable information" belonging to Elias from its access to the Client Portal "prior to and after September 2018";

(e) Kissler obtained "a significant strategic, competitive advantage" against Elias from its access to the Client Portal;

(f) Kissler used the information it obtained on the Client Portal to "market the competing products to [Elias] customers under more favorable terms";

(g) Kissler "fraudulently" accessed the Client Portal;

(h) Elias has "suffered hundreds of thousands—if not millions of dollars—in lost profits and other costs as a result of" Kissler's "Fraudulent Access" to the Client Portal;

(i) Kissler has violated the Computer Fraud and Abuse Act;

(j) Kissler "purposefully intended to interfere with [Elias'] existing contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's clients under more favorable terms";

(k) Kissler "purposefully intended to interfere with [Elias'] prospective contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's potential clients under more favorable terms"; and

(l) "As a direct and proximate result of Kissler's acts, [Elias] has and continues to suffer irreparable injury for which there is no adequate remedy at law."

65.     Elias made the aforementioned false statements in written and oral communications to at least twelve of its customers:  Central Plumbing Specialties, General Plumbing Supply (New Jersey), Hajoca Corporation, Webster Plumbing Supply, Banner Plumbing Supplies, Allied Plumbing & Heating Supply Co., Plimpton & Hills, ARPNY, Southam Boy Plumbing, Go Atlantic, FW Webb, and Bell Ridge Plumbing Supply; and to Barry E. Walter Sr. Company and Faucet Shark, Inc, among others.

66.     Elias' aforementioned false statements, which are intended to – and do – cast doubt upon the nature, characteristics, quality, approval and certification of Kissler's products, constitute disparagement under Pennsylvania common law.

67.     Elias intended its statements to cause pecuniary loss to Kissler or otherwise should have recognized that the statements would result in such pecuniary loss.

68.     Elias' statements are not privileged, or constitute an abuse of any conditional privilege that might otherwise apply.  These statements were made with knowledge that the

statements were false or were otherwise made with reckless disregard to the statements' truth or falsity.

69.     As a direct result of Elias' aforementioned false, misleading and deceptive statements, Kissler has suffered pecuniary and other damages.

70.     Elias' misconduct is willful, malicious and outrageous.

## COUNT III
### Defamation

71.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

72.     Elias has published and disseminated false, misleading and deceptive statements regarding Kissler and its business and products to various third parties, including the following statements (among others):

(a) Between September and November of 2018, Kissler accessed Elias's so-called "Client Portal" using the log-in credentials of "L.A.S. Replacement Parts, Inc.," without authorization;

(b) In November of 2018, Kissler accessed Elias's Client Portal using the login credentials of Ken Hans, a former Elias employee, without authorization;

(c) During the period between November, 2018, and July, 2019, Kissler accessed Elias's Client Portal multiple times using the log-in credentials of various Elias clients;

(d) Kissler improperly obtained "extremely valuable information" belonging to Elias from its access to the Client Portal "prior to and after September 2018";

(e) Kissler obtained "a significant strategic, competitive advantage" against Elias from its access to the Client Portal;

(f) Kissler used the information it obtained on the Client Portal to "market the competing products to [Elias] customers under more favorable terms";

(g) Kissler "fraudulently" accessed the Client Portal;

(h) Elias has "suffered hundreds of thousands—if not millions of dollars—in lost profits and other costs as a result of" Kissler's "Fraudulent Access" to the Client Portal;

(i) Kissler has violated the Computer Fraud and Abuse Act;

(j) Kissler "purposefully intended to interfere with [Elias]'s existing contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's clients under more favorable terms";

(k) Kissler "purposefully intended to interfere with [Elias]'s prospective contractual client relationships by using the information obtained from the Fraudulent Access to obtain a competitive advantage and negotiate with Tapco's potential clients under more favorable terms"; and

(l) "As a direct and proximate result of Kissler's acts, [Elias] has and continues to suffer irreparable injury for which there is no adequate remedy at law."

73.    Elias publicly disseminated the aforementioned false statements to at least twelve of its customers:  Central Plumbing Specialties, General Plumbing Supply (New Jersey), Hajoca Corporation, Webster Plumbing Supply, Banner Plumbing Supplies, Allied Plumbing & Heating Supply Co., Plimpton & Hills, ARPNY, Southam Boy Plumbing, Go Atlantic, FW Webb, and Bell Ridge Plumbing Supply; and to Barry E. Walter Sr. Company and Faucet Shark, Inc, among others.

74.    Elias' false, misleading and deceptive statements ascribe to Kissler conduct and characteristics that prejudice it in the conduct of its business and deter others from dealing with it.  As such, these statements are defamatory per se.

75.    Elias made the numerous false statements at issue willfully and maliciously.

76.    Elias' statements are not privileged, or constitute an abuse of any conditional privilege that might otherwise apply.  These statements were made with knowledge that the statements were false or were otherwise made with reckless disregard to the statements' truth or falsity.

77.     As a direct result of Elias' aforementioned false, misleading and deceptive statements, Kissler has suffered damages, including, without limitation, special harm including the loss of at least one customer, Faucet Shark, Inc., who accounted for approximately $500,000 in revenue over the past six years, and actual harm to Kissler's reputation.

78.     Elias' misconduct is willful, malicious and outrageous.

## COUNT IV
### Unfair Competition

79.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

80.     Elias' aforementioned conduct, including, without limitation, the dissemination of the aforementioned false, misleading and deceptive representations regarding Kissler and its business activities as well as Elias' own products in order to deceive consumers and harm Kissler's business for Elias' unjust enrichment, offends established public policy, is immoral, unethical, oppressive, unscrupulous and injurious to consumers and constitutes unfair competition under Pennsylvania common law.

81.     Elias' misconduct is willful, malicious and outrageous.

## COUNT V
### Tortious Interference with Existing and Prospective Contractual Relations

82.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully set forth herein.

83.     Kissler has existing and prospective contractual relationships with its customers for the purchase and sale of plumbing parts, including, without limitation, Faucet Shark, Inc.

84.     Kissler had and has ongoing business and/or contractual relationships with its customers for the purchase and sale of plumbing parts, including, without limitation, Faucet

Shark, Inc., and there was a reasonable probability that Kissler would enter into additional contractual relationships with those customers for the purchase and sale of plumbing parts.

85.     Elias knew of the existence of Kissler's existing and prospective contractual relationships with those third parties.

86.     Elias purposefully intended to interfere with Kissler's existing and prospective contractual relationships including, but not limited to, Kissler's relationship with Faucet Shark, Inc., by disseminating false, misleading and deceptive statements regarding Kissler and its business practices and products, with the intent to harm Kissler's existing and prospective business relationships with those customers.  Elias knew that such a result was substantially certain to result from its conduct.

87.     Elias did not have a privilege or justification for its interference with Kissler's existing and prospective contractual relationships.

88.     Elias interfered with Kissler's existing and prospective contractual relationships for the purpose of increasing Elias' sales and market share and diverting Kissler's customers to Elias.

89.     Kissler has suffered damages as a result of Elias' interference.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim-Plaintiff, Kissler & Co., Inc., respectfully requests that this Honorable Court to enter the following relief:

    i.    Deny Elias's claims for relief;

    ii.    A monetary judgment against Elias in an amount in excess of $75,000, plus pre-judgment and post-judgment interest thereon at the legal rate;

    iii.    Issue a permanent injunction prohibiting Elias from making any false, misleading or deceptive statements regarding Elias' products, including the OEM Representation;

iv.     An order requiring Elias to disgorge and pay to Kissler all profits obtained by it as a result of its false, misleading or deceptive statements regarding Elias' products, and awarding Kissler damages suffered by it as a result of Elias' conduct, costs of this action, treble damages and attorneys' fees, in accordance with 15 U.S.C. § 1117;

v.      An order awarding to Kissler the costs and expenses incurred by Kissler in responding and moving to dismiss Elias' trade secret misappropriation claims, including, but not limited to, attorneys' fees, under 18 U.S.C. § 1836(b)(3)(D) and 12 Pa. Cons. Stat. § 5305;

vi.     An order awarding to Kissler punitive damages against Elias; and

vii.    Any such other and further relief as the Court deems just and proper under the circumstances.

## JURY TRIAL DEMANDED ON ALL CLAIMS SO TRIABLE

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By:____*/s/ Fridrikh V. Shrayber*_____
        Fridrikh V. Shrayber (Pa. Id. No. 208083)
        Connor P. Sease (Pa. Id. No. 327326)
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Tel: (412) 297-4900 / Fax: (412) 209-0672
fred.shrayber@dentons.com
connor.sease@dentons.com

Counsel for Defendant and Counterclaim Plaintiff, Kissler & Co. Inc.

Dated: April 12, 2022
3978897.v1

33

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Answer, Affirmative

Defenses and Amended Counterclaims was filed electronically on April 12, 2022.  Notice of this

filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may

access this filing through the Court's system.

<div style="text-align:center; margin-left:40%;">

*/s/ Fridrikh V. Shrayber*

Fridrikh V. Shrayber

</div>